ANGEL FIGUEROA, demandante y apelante, *v.* PORTO RICO RAILWAY, LIGHT & POWER Co. y MIGUEL WIEWALL, JR., demandados y apelados. DOMINGO FUENTES VARGAS, demandante y apelante, *v.* LOS MISMOS, demandados y apelados. LAUREANO GONZÁLEZ, demandante y apelante, *v.* LOS MISMOS, demandados y apelados. GERTRUDIS TORRES VDA. DE GARCÍA, demandante y apelante, *v.* LOS MISMOS, demandados y apelados.

Núms. 9071, 9072, 9073 y 9074.—*Sometidos:* Abril 3, 1946.
*Resueltos:* Julio 24, 1946.

*Ismael Soldevila,* abogado de los apelantes; *Brown, Newsom & Córdova,* abogados de la apelada Porto Rico Railway, Light & Power Co.,; *Hugh R. Francis* y *Vicente M. Ydrach,* abogados de Miguel Wiewall, Jr., apelado.

EL JUEZ PRESIDENTE SEÑOR TRAVIESO emitió la opinión del tribunal.

Ante la Corte de Distrito de San Juan se presentaron cuatro demandas en reclamación de daños y perjuicios contra la Porto Rico Railway, Light & Power Co. y Miguel Wiewall, Jr., la primera, por Domingo Fuentes con motivo de lesiones que recibiera, la segunda, por Angel Figueroa por la muerte de su hijo Félix Figueroa, la tercera, por Lau-

reano González por la muerte de su hijo Carlos González, y la cuarta, por Gertrudis Torres vda. de García por la muerte de su hijo Lorenzo García Torres, que fueron radicadas bajo los números 30933, 30970, 30984 y 31023, respectivamente. La alegación fundamental de estas demandas y sobre la cual descansan su acción los demandantes según el caso incoado por la muerte de Félix Figueroa, que copiamos a continuación, no haciéndolo en cuanto a los demás por ser idénticas las demandas, reza como sigue:

"7. El fallecimiento del referido hijo del demandante se debió a la coetánea y conjunta negligencia e imprudente temeridad de ambos demandados, Porto Rico Railway, Light & Power Co. y Miguel Wiewal, Jr., de los cuales la primera tenía totalmente descubierto y sin aislación, red o protección alguna, el alambre o cable conductor en cuestión, a pesar de estar situado en lugar bien poblado y a poca distancia de casas habitadas en calle de mucho tránsito dentro de la zona urbana, y a pesar de conocer su obligación en tal sentido; no colocó letreros, como le incumbía, para indicar el peligro que ofrecía dicho alambre por la intensidad de la corriente que continuamente llevaba y lleva; no tenía ni tiene interruptores de circuitos o algún dispositivo que, automática e inmediatamente, cortara el paso de la corriente si el alambre hacía contacto con algún cuerpo extraño, no interrumpió o paralizó a tiempo la transmisión del flúido eléctrico por el mencionado alambre o cable conductor al ocurrir el contacto, ni adoptó medida eficaz alguna para evitar la muerte de Félix Figueroa, todo lo cual pudo haber hecho; y de los cuales demandados, el segundo no advirtió a Félix Figueroa, quien lo ignoraba, el peligro que podía haber, no instruyó a ninguna de las personas que trabajaban en el sitio para que no permitieran contacto alguno con el alambre conductor de la Porto Rico Railway, Light & Power Co., no proveyó de guantes de goma o de material adecuado a Félix Figueroa o le explicó su necesidad o conveniencia para caso de que hubiera contacto con algún alambre cargado de electricidad, ni siguió procedimiento alguno para evitar el percance, como pudo haberlo evitado."

Por estipulación de las partes contendientes los cuatro casos antes referidos fueron consolidados para los fines de la vista del juicio, y asimismo sometidos a nuestra consideración; y del juicio seguido sobre esas demandas y sus res-

pectivas contestaciones, la corte inferior el 19 de diciembre de 1941 dictó sentencia declarándolas sin lugar y condenando a los demandantes al pago de las costas. Apelaron los demandantes y para sostener su recurso, señalan la comisión de seis errores, a saber:

"1. Incurrió en error la corte de distrito al no decidir que la referida demandada fué negligente debido a su violación de la Ordenanza Municipal que la exigía cubierta protectora a los alambres, aviso de peligro en los postes con primarios y red en los ángulos.

"2. La corte de distrito cometió error al resolver que el demandado Miguel Wiewall, Jr., no fué negligente ni tiene que responder de los daños sufridos por los demandantes.

"3. La corte de distrito erró al decidir que si los trabajadores dejaron que el tubo en cuestión se cayera e hiciera contacto con los alambres, ese acto y no el descuido del demandado fué la causa próxima del suceso.

"4. Constituyó error de la corte de distrito haber resuelto que la demandada Porto Rico Railway, Light & Power Co. no fué negligente al mantener sus cables eléctricos sin aislación o cubierta protectora por no haber obligación suya en tal sentido.

"5. Erró la corte de distrito al no considerar probado el hecho de que la empresa eléctrica carecía de adecuados dispositivos y no cortó la corriente a tiempo, por lo cual debe responder de los daños causados.

"6. Es errónea y contraria a derecho la sentencia dictada contra los demandantes, cuando debió ser contra los demandados por su negligencia concurrente o contra cualquiera de ellos si uno solo fué responsable del accidente."

Para la mejor inteligencia de las cuestiones a considerar y resolver en el presente recurso, será conveniente que hagamos ahora un breve relato de los hechos resultantes de la prueba practicada en estos casos.

Allá por el 11 de junio de 1938, el demandado Miguel Wiewall, Jr., decidió colocar en el patio de la casa de su cuñado Jorge Dávila, sita en la calle Miramar número 11, de Santurce, Puerto Rico, una antena para radio que habría de colocarse en el tope de dos tubos o postes de hierro galvanizado y con tal propósito y para que le ayudaran en esa

labor llamó o hizo llamar al demandante Domingo Fuentes, a Félix Figueroa, Carlos González y Lorenzo García. En la calle Miramar se encuentran los alambres de la demandada Puerto Rico Railway, Light & Power Co., los que para sostenerlos, y frente a la misma casa, hay dos postes con sus crucetas; en la superior, hay seis hilos de alambres y tres en la inferior; el primero de los alambres a la derecha de la cruceta superior, yendo de norte a sur, no tiene corriente eléctrica durante las horas del día; el segundo, "es tierra" y lleva alguna; los terceros, cuarto y quinto cargan una corriente de 2,300 voltios, y el sexto, está en iguales condiciones que el primero. La cruceta inferior tiene tres alambres de 110 voltios cada uno, se llaman secundarios y son usados para dar servicio a las residencias. Entre estos dos postes hay una distancia de 60 pies. La casa que nos ocupa queda en el trayecto entre las Avenidas Fernández Juncos y Nueva Palma, haciendo esquina con esta última. El poste más cercano a la primera avenida mide 35 pies, y el otro, situado en la esquina Nueva Palma y Miramar, mide 40 pies de alto. Los alambres de la cruceta superior, llamados primarios están a 32 pies de altura sobre el nivel de la calle. La cruceta inferior está a dos pies de distancia de la superior y a 29 pies de la tierra con los alambres en ella enhilados. Estos postes están en el encintado de la calle Miramar, uno de ellos a 8 pies de distancia, y el otro, un poco más distante, de la verja que separa la acera del solar de la casa, y ésta queda, a su vez, a una distancia de 13 pies de la verja, mediando, por tanto, 21 pies entre la casa y el poste. El día en cuestión se cavó un hoyo dentro del patio de la casa como a una distancia de 6 pies de la verja donde habría de enclavarse un tubo de hierro galvanizado como de 40 pies de largo. Bajo la dirección del codemandado Wiewall empezaron los obreros a realizar el trabajo y mientras Carlos González sujetaba el tubo para colocarlo en el hoyo, Domingo Fuentes, Félix Figueroa y Lorenzo García, al igual

que Wiewall, cada uno, sostenía un viento para mantener el equilibrio del tubo y cuando éste ya estaba parado verticalmente en el hoyo, sin que se pudiera determinar cómo, cayó e hizo contacto con el tercer alambre de la cruceta superior que llevaba una corriente eléctrica de 2,300 voltios causando un corto circuito con los cuerpos de los trabajadores y Wiewall que ocasionó la muerte de Lorenzo García, Carlos González y Félix Figueroa, y lesiones a Domingo Fuentes y Wiewall.

█ Alegan los apelantes que la corte erró al no declarar que fué negligente la demandada Porto Rico Railway, Light & Power Co. debido a su violación a la ordenanza municipal de la ciudad de San Juan que le exigía tener cubierta protectora a los alambres de sus líneas, aviso de peligro en los postes con alambres primarios y red en los ángulos a fin de proteger vidas y propiedades. En contra de esta contención, alega la compañía apelada que la referida ordenanza es nula, y así lo resolvió la corte inferior, por entender que el Municipio de San Juan carecía de facultades para aprobarla. No vamos a entrar a considerar la validez o no de esta ordenanza puesto que para los fines de esta opinión lo creemos innecesario, ya que nuestro criterio es el que expusiera el extinto Juez Asociado de este Tribunal, Sr. Texidor, en su opinión concurrente en el caso de *Arreche* v. *Porto Rico Railway, Light & Power Co.*, 40 D.P.R. 299, 305. En este caso se expresó así:

"En cuanto a que de la prueba no aparece que hubiera reglamentación expresa en cuanto a velocidad ·en el sitio en que ocurrió el accidente, ni aparece deber impuesto por ley u ordenanza, con respecto a tocar la campana en aquel sitio, si las hubieren, la falta de tales reglas y ordenanzas, constituiría culpa; y, de no haberlas, la falta cae dentro del concepto de negligencia, u omisión de la prudencia ordinaria requerida para evitar accidente."

█ Vamos a considerar conjuntamente los errores señalados bajo los números 2, 3 y 4 por versar sobre la misma

cuestión o sea la negligencia imputada a los demandados por los apelantes. La cuestión fundamental a considerar y resolver en este recurso, según las alegaciones y la prueba, es si la negligencia imputada a los demandados fué la causa próxima del accidente.

¿Tenía Miguel Wiewall, Jr., la obligación de prevenir a sus peones u obreros contra posibles accidentes y de equiparlos de medios para proteger sus vidas? ¿Fué el defecto de aislar los alambres imputado a la compañía o las omisiones imputadas a Wiewall la causa próxima del accidente?

No podemos perder de vista que el trabajo que Wiewall encargara a sus obreros a realizar no estaba relacionado directa ni indirectamente con corriente eléctrica alguna y que teniendo en consideración la prueba en estos casos, el sitio donde debería efectuarse el trabajo estaba a cierta distancia de los alambres de alta tensión conductores de corriente eléctrica instalados en los postes a 32 pies de altura sobre el nivel de la calle, existiendo, por tanto, la posibilidad, pero no la probabilidad, de que un tubo de hierro galvanizado de 40 pies de largo al levantarse verticalmente sobre la tierra pudiera caer sobre los alambres eléctricos en cuestión y que al hacer contacto se produjera un corto circuito que ocasionara el accidente antes relatado. No podemos dar por sentado que Wiewall pudiera anticipar que el tubo de metal habría de caerse y al así suceder venir en contacto con los alambres de la compañía demandada. La regla aplicable a casos de esta índole es que las consecuencias de un acto negligente que debió preverse son las que están dentro de las probabilidades y no dentro de las posibilidades. Véase la obra de Shearman & Redfield *On Negligence, Revised Edition* de 1941, Vol. 1, pág. 95, párrafo 35, que dice así:

"Las consecuencias de un acto negligente deben estar dentro del campo de las probabilidades según las percibe una persona corriente, y las consecuencias que son meramente posibles no pueden ser consideradas probables o naturales. Las consecuencias alegadas del acto

aquí considerado negligente no son tales que podrían haber sido razonablemente previstas o anticipadas. Uno debe solamente anticipar las razonables y naturales consecuencias de sus actos.''·

''Probabilidad de una consecuencia implica expectación o espera de la misma. Uno no es responsable de aquellas consecuencias que son meramente posibles, pero sí de las que son probables de acuerdo a la experiencia corriente. Las consecuencias probables pueden anticiparse, pero no aquellas que solamente son posibles. Las naturales y probables consecuencias son aquellas que la mente humana puede prever.''

En el supuesto caso de que Wiewall hubiera tenido el deber de advertir a sus trabajadores de la existencia de un peligro y de protegerlos contra éste, nos preguntamos, ¿fué tal omisión la causa próxima del accidente? Opinamos que no. La regla general al efecto es la de que aun cuando un patrono no ejerciera la debida precaución para proteger la vida de sus empleados, sólo puede hacérsele responsable de los daños sufridos por éstos cuando existe relación causal entre su negligencia y el daño causado. Véase la obra *American Jurisprudence*, Vol. 35, pág. 555, párrafo 126, de la que traducimos lo siguiente:

''No obstante ser un patrono culpable de no ejercer el debido cuidado de sus empleados según lo dispone la ley común o por el incumplimiento de un deber estatutario impuesto para beneficio de éstos, él puede, en ausencia de cualquier imposición de responsabilidad estatutaria, ser responsable de los daños sufridos por los mismos solamente si existe conexión o relación causal entre su negligencia y el daño de que se queja el empleado.

''Un patrono no es responsable por daños sufridos por un empleado a menos que el daño sea el resultado próximo de la conducta indebida imputable a aquél.''

La causa próxima del accidente según resulta de la prueba fué el hecho de venir en contacto con los alambres eléctricos el tubo de metal y no la omisión de dar instrucciones el demandado Wiewall a sus trabajadores ni la falta·

de proveerle guantes de gomas u otros medios de protección; en otras palabras, en este caso concurrió una causa interventora e independiente no producida por acto u omisión imputable a Wiewall, la que fué causa próxima del accidente. Véase *Colón* v. *Shell Co.* (*P. R.*) *Ltd.*, 55 D.P.R. 592, 618.

Discutido todo lo relacionado con el demandado Wiewall, pasamos ahora al estudio y consideración de los hechos constitutivos de negligencia imputados a la compañía demandada. Teniendo o no la compañía demandada la obligación de mantener cubiertos los alambres de alta tensión que pasaban por la calle Miramar a una altura de 32 pies sobre el nivel de la calle, ¿fué la omisión de aislar o cubrir los alambres y de poner aviso de peligro en los postes de los alambres primarios la causa próxima del accidente?

La jurisprudencia sobre la cuestión levantada en este pleito sostiene que un alambre trasmisor de una corriente eléctrica de alta tensión constituye un serio peligro para vidas y propiedades, por el hecho de que el más ligero contacto con el mismo puede causar la muerte de un ser humano y destrucción de propiedades. Por ello, la jurisprudencia exige que los que se dedican al negocio de generar y distribuir electricidad usen sumo grado de cuidado en evitación de daño, no obstante sostener que las personas o empresas dedicadas a este negocio no tienen la responsabilidad de un asegurador, pues solamente son responsables en aquellos casos en que por su culpa o negligencia causan daños al no usar el debido cuidado o diligencia en proporción al peligro que el uso de la electricidad conlleva. Véase *Matos* v. *P. R. Railway, Light & Power Co.*, 58 D.P.R. 160, 164.

Ya este Tribunal en el caso de *Matos* v. *P. R. Railway, Light & Power Co.*, supra, por voz del Juez Asociado Sr. De Jesús, ha sentado la doctrina a seguir en casos similares al presente en relación con el deber de aislar mediante cubierta los alambres eléctricos de alta tensión en aquellos si-

tios donde puede esperarse razonablemente que personas vengan en contacto con ellos. Al efecto dijo:

"Como el alambre trasmisor de corriente de alta tensión no ofrece peligro a menos que venga en contacto con las personas, la jurisprudencia exige que se cubra con material que impida que se escape la corriente sólo cuando haya la probabilidad de que pueda existir tal contacto."

En 9 *Ruling Case Law,* 1213, sección 21, se expone la regla en los siguientes términos:

"'Aislación en determinados puntos o sitios. Es razonable que el deber de proveer aislación esté limitado a puntos o sitios donde haya motivos para sospechar que las personas puedan venir en contacto con los alambres, y la ley no obliga a compañías generadoras o distribuidoras de electricidad a aislar sus alambres en todas partes, sino en aquellos sitios donde la gente pueda ir a trabajar, a negocios o por placer; es decir en aquellos sitios donde razonablemente pueda esperarse que vayan."

Citaremos a continuación varios casos para ilustrar la doctrina enunciada en que varios tribunales la han aplicado.

En *Webb* v. *Louisiana Power & Light Co.,* (La.) 199 So. 451, la corte resolvió que no existía causa de acción contra la compañía por la electrocución de una persona que dejó un tubo venir en contacto con una línea de distribución descubierta que quedaba a 24 pies del suelo, ya que la compañía no podía razonablemente anticipar que el causante iba a manipular un tubo de 30 pies en forma tal que viniera en contacto con la línea. La corte se expresó en dicho caso como sigue:

"Aparece ante nos que el demandado cumplió todos los deberes legales que le fueran impuestos. Aunque los alambres en cuestión no estaban aislados se dió cumplimiento a otra alternativa, esto es, la de situarlos más allá de la línea de peligro de contacto con seres humanos. Mientras estuviesen ocupados en el curso ordinario de sus asuntos, los viandantes no podían recibir daño alguno de ellos. El demandado no podía razonablemente anticipar que el interfecto reti-

raría de la tierra un tubo de más de 30 pies de largo que estaba conectado a un pozo y que haría contacto con la línea de trasmisión.''

En el caso de *Bujol* v. *Gulf State Utility Co.,* (La.) 147 So. 545, también se trataba de un tubo que vino en contacto con alambres de alta tensión y se resolvió que la compañía no tenía la obligación de cubrir los alambres ya que ella no estaba obligada a esperar que un tubo viniera en contacto con sus líneas. La corte dijo:

"No se discute que los alambres de la compañía demandada en este sitio de sus líneas no estuvieren aislados, mas la evidencia demuestra que una línea de esta clase no es generalmente aislada, y que la National Bureau of Standards cuyas reglas rigen en sus construcciones no exijen tal requisito. El deber de aislar parece estar limitado de acuerdo a las autoridades según nosotros las leemos 'a aquellos puntos o sitios donde hay razón para temer que personas puedan venir en contacto con los alambres, y la ley no obliga a las compañías de electricidad a aislar sus alambres donde quiera, sino únicamente en aquellos sitios donde la gente pueda ir a trabajar, a negocios o por placer, esto es donde razonablemente pueda esperarse que vayan.' ''

En la hipótesis que la omisión de la compañía demandada de aislar los alambres en cuestión pudiera considerarse como negligencia, ésta, a nuestro entender, no fué la causa próxima y directa del accidente. En el caso de *Colón* v. *Shell Co. (P. R.) Ltd.,* 55 D.P.R. 592, 618, refiriéndonos a la intervención de un agente independiente como causa próxima de un accidente, dijimos:

"Para que pueda sostenerse con éxito que el daño causado a otro es el resultado de la intervención de un agente independiente, es requisito *sine qua non* que al tiempo de ponerse en acción la fuerza que culminó en el daño, no existiera todavía el agente independiente, o en caso de existir ya, lo ignorase el demandado y no pudiese razonablemente preverlo, pues en caso de existir entonces y conocerlo el demandado, o no conociéndolo pudiendo razonablemente preverlo, entonces el supuesto agente independiente no es otra cosa que una situación de hecho o circunstancia que debió tener en cuenta el demandado al actuar o dejar de actuar en la forma en que lo hizo.''

En el caso de autos a no mediar la intervención de un agente independiente, no hubiese ocurrido el accidente. Este agente fué, sin lugar a dudas, la caída de un tubo de 40 pies de largo sobre los alambres de alta tensión de la compañía demandada, sin que la prueba de la parte apelante haya determinado la causa de su caída y si ésta se debió a algún acto de negligencia imputable a los demandados. Bajo tales circunstancias, ¿estaba obligada la compañía demandada a anticipar un acto independiente de esta naturaleza y tomar medidas y precauciones para evitar sus consecuencias? Sostenemos la negativa y la fundamos en lo ya resuelto por este tribunal en el caso de *Matos* v. *P. R. Railway, Light & Power Co.,* supra. Véase *Green* v. *West Penn. Rys. Co.,* (Pa.) 246 Pa. 340, 92 Atl. 341. Opinamos que la demandada no podía haber previsto razonablemente las circunstancias que motivaron el accidente de los casos de autos. No podía prever razonablemente que alguien que no fuera su empleado o estuviese relacionado con ella dejaría caer sobre sus líneas eléctricas un tubo de 40 pies de largo. La doctrina sentada en el caso de *Matos* v. *P. R. Railway, Light & Power Co.,* supra, es de perfecta aplicación al caso de autos. Todo lo resuelto en cuanto a la negligencia imputada a la compañía demandada por la omisión de aislar los alambres se hace extensivo al acto negligente de no colocar letrero en los postes primarios dando aviso de la existencia de peligro y de no usar red en los ángulos. De existir tal deber, su omisión no fué la causa próxima del accidente. Por los fundamentos expuestos entendemos que no se cometieron los errores señalados.

Sostienen los apelantes en su quinto señalamiento que la causa próxima del accidente fué el hecho de carecer la compañía demandada de adecuados dispositivos o interruptores y de no cortar la corriente a tiempo. En el caso de autos, declararon por la compañía demandada dos ingenieros electricistas, o sean los señores Carlos Zabater y Ma-

nuel Font. Se contrajeron sus declaraciones al funcionamiento y propósito de los interruptores automáticos. Declararon, además, que los interruptores automáticos no pueden evitar el peligro de que la corriente pase por un cuerpo humano al hacerse contacto con los alambres, pues en tal caso la corriente que pasa por el cuerpo humano es la que produce el corto circuito que trae por consecuencia el funcionamiento del interruptor automático de la corriente; pero cuando funciona el interruptor automático, especialmente cuando se trata de una corriente de 2,300 voltios, ya el daño se ha producido. En otras palabras, el propósito del funcionamiento del interruptor automático es dar aviso de la existencia de un accidente o peligro y no su evitación. Según la prueba y la corte inferior así lo declaró probado, las muertes y lesiones fueron ocasionadas instantáneamente. Esta prueba no aparece controvertida por la que presentaron los apelantes y, por lo tanto, tenemos que aceptarla como cierta. Entendemos que tampoco es causa del accidente que después del suceso, no tratara la compañía demandada de cortar la corriente inmediatamente, pues ya había ocurrido la desgracia. No se ha cometido el error alegado.

■ Y, por último, alegan los apelantes que es errónea y contraria a derecho la sentencia dictada contra los demandantes, cuando debió ser contra los demandados por su negligencia concurrente o contra cualquiera de ellos si uno solo fué responsable del accidente. Hemos hecho un estudio detenido de la prueba aducida en estos casos y de los autos no hay base para concluir que la corte inferior cometiera manifiesto error en su apreciación de la prueba y que la sentencia no se ajusta a derecho.

*Por todo lo expuesto, las sentencias apeladas deben ser confirmadas.*

El Juez Asociado Sr. Córdova se inhibió.