RUTH EVELYN PACHECO VDA. DE BEZARES, ETC., demandantes y recurridos, *v.* AUTORIDAD DE LAS FUENTES FLUVIALES DE PUERTO RICO, demandada y recurrente.

*Número:* R-80-381 *Resuelto:* 12 de marzo de 1982

*Luis A. Lugo* y *José F. Irizarry González,* abogados de la recurrente; *César A. Hernández Colón* y *José Enrique Ayoroa Santaliz,* abogados de los recurridos.

PER CURIAM: La Autoridad de Fuentes Fluviales tenía instalado un poste en la carretera estatal núm. 127. El referido poste sostenía dos líneas de energía eléctrica y se encontraba a ocho pies, tres pulgadas de distancia del borde de la vía pública. Por encontrarse ubicado en una curva, la Autoridad colocó otro poste para que sirviera de sostén. Ambos postes se encontraban unidos por dos cables tensores. Para evitar poner en peligro a personas y propiedad en caso de que advengan en contacto con líneas eléctricas, se le instalan aisladores para que no conduzcan

energía a tierra. En este caso le habían instalado los aisladores correspondientes a cada tensor.

Un automóvil se salió de la carretera e impactó el poste de sostén. Éste se partió y se precipitó al suelo, llevándose los cables tensores. Parte de uno de los tensores quedó colgando y se enredó en el poste que cargaba las líneas eléctricas, pasando por alto el aislador. El tensor hizo contacto con una de las líneas de 4,160 voltios, lo que provocó que todos los tensores se electrificaran. El automóvil quedó en contacto con uno de los tensores y con una verja que corría a lo largo de la orilla de la carretera. Tanto el automóvil como la verja se electrificaron. Las dos personas que viajaban en el auto perdieron la vida al tratar de bajarse del mismo.

Jesús Bezares y Miguel Torres Lugo transitaban por allí cerca. Cuando se enteraron del accidente, se detuvieron en el lugar de los hechos. Bezares quiso ver de cerca y se pegó a la verja de alambres. Murió electrocutado. La familia de éste presentó demanda contra el Estado Libre Asociado de Puerto Rico, la Autoridad de Carreteras y la Autoridad de Fuentes Fluviales. Se dictó sentencia parcial desestimando la demanda en cuanto al Estado Libre Asociado de Puerto Rico y la Autoridad de Carreteras. Los demandantes basaron su alegación de negligencia contra la Autoridad de Fuentes Fluviales en que no se había provisto a los cables tensores con las medidas de aislación necesarias para evitar que los mismos se electrificaran. Accedimos a revisar.

En *Ramos* v. *Aut. Fuentes Fluviales*, 86 D.P.R. 603, 609–610 (1962), establecimos cuáles eran las normas que deben velar las personas que se dedican a generar y distribuir electricidad:

> Las personas o empresas que se dedican a generar y distribuir electricidad deben ejercitar el más alto grado de cuidado para evitar causar daño, atendido el carácter inherentemente peligroso de este elemento. Ahora bien, no

tienen la responsabilidad de un asegurador, y por tanto, no responden en cualquier caso en que se cause un perjuicio, a menos que el daño haya sido producido por su culpa o negligencia al omitir desplegar un grado de cuidado en proporción al riesgo o peligro envuelto. [Citas omitidas.] Este grado de cuidado no se extiende únicamente a la instalación, mantenimiento y operación de la planta productora de la electricidad y las líneas que la conducen; incluye, además, la obligación de realizar una inspección adecuada para descubrir defectos y situaciones de peligro o riesgo para el público. [Citas omitidas.]

Precisamente como no se trata de una situación de responsabilidad absoluta, no es indispensable que se protejan las líneas en forma tal que se elimine toda posibilidad de causar daños; la obligación consiste en tomar aquellas precauciones que aseguren contra las probabilidades de riesgos y peligros. [Citas omitidas.] Debe recordarse que tratándose de un servicio de primera necesidad, la distribución de la electricidad y fuerza eléctrica no debe impedirse requiriendo que se adopte toda la protección concebible por la mente humana a los fines de evitar riesgos no importa cuán imprevisibles sean éstos. El beneficio social que proporciona la electrificación no puede derrotarse mediante la exigencia de una responsabilidad absoluta.

Véase en este mismo sentido, *Santos Ocasio* v. *A.F.F.*, 103 D.P.R. 564, 566 (1975); *Rosario Crespo* v. *A.F.F.*, 94 D.P.R. 834 (1967); *Vda. de Andino* v. *A.F.F.*, 93 D.P.R. 170 (1966).

■ Desde comienzos de siglo hemos reconocido que es deber de una compañía de electricidad que mantiene alambres transmisores de alta tensión proteger al público de éstos, aislándolos de manera efectiva o proveyendo otros medios de protección, particularmente cuando están ubicados en lugares donde el público tiene derecho a estar y existe la probabilidad que vengan en contacto con ellos. *Vda. de Dávila* v. *Fuentes Fluviales*, 90 D.P.R. 321 (1964); *Matos* v. *P.R. Ry., Lt. & P. Co.*, 58 D.P.R. 160 (1941); *Orta* v. *P.R. Railway, L. & P. Co.*, 36 D.P.R. 743, 746 (1927); y

*Rosado* v. *Ponce Railway & Light Co.,* 18 D.P.R. 609 (1912).

■ En *Matos,* supra, a la pág. 164, expusimos la norma que debe exigírsele a las compañías encargadas de suministrar energía eléctrica en cuanto a su deber de aislar mediante cubierta los alambres eléctricos y en ese sentido dijimos: "[c]omo el alambre transmisor de corriente de alta tensión no ofrece peligro a menos que venga en contacto con las personas, la jurisprudencia exige que se cubra con material que impida que se escape la corriente *sólo cuando haya la probabilidad de que pueda existir tal contacto."* (Énfasis suplido.) Entendemos que la anterior norma es adecuada y que, por consiguiente, la debemos seguir en cuanto a los aisladores que se deben colocar en los cables tensores.

■ Un examen de la sentencia que fue dictada nos convence de que la responsabilidad que le fue impuesta a la Autoridad se fundó en su supuesta falta de previsión, al no colocarle más aisladores a los cables tensores. El criterio de la previsión de los daños lo hemos reconocido como base para la responsabilidad extracontractual. *Dworkin* v. *S. J. Intercont. Hotel Corp.,* 91 D.P.R. 584, 586 (1964), y casos allí citados. Claro está, esto no quiere decir que la persona esté obligada a prever todos los posibles riesgos que puedan concebirse en una determinada situación, pues prácticamente se convertiría entonces en una responsabilidad absoluta. Así en *Hernández* v. *La Capital,* 81 D.P.R. 1031, 1038 (1960), expusimos que "[e]l deber de previsión no se extiende a todo peligro imaginable que concebiblemente pueda amenazar la seguridad . . . sino a aquel que llevaría a una persona prudente a anticiparlo". En *Figueroa* v. *P.R. Ry., Light & P. Co.,* 66 D.P.R. 488, 495 (1946), un caso donde también estaba en controversia un accidente con líneas eléctricas, reconocimos que "[l]a regla aplicable a casos de esta índole es que las consecuen-

cias de un acto negligente que debió preverse son las que están dentro de las probabilidades y no dentro de las posibilidades". Ahora bien, debemos entonces preguntarnos, ¿era la situación del caso de autos probable y por consiguiente previsible? Veamos las declaraciones de los peritos.

El ingeniero Milton Castro declaró en calidad de perito de la parte demandada. Señaló que la Autoridad al hacer la instalación, operación y conservación de sus líneas eléctricas sigue las normas del "National Electric Safety Code". En este Código se consideran todos los riesgos probables de instalaciones eléctricas. Declaró que el Código exige los aisladores para "llevar a un mínimo la posibilidad de que bajo alguna circunstancia, cualquiera de estos tensores pudiera activarse, y una persona pues pudiese tocar estos cables y quedar electrocutada". En el caso de autos, los tensores tenían instalados aisladores. Declaró que no existía una norma en el Código que previera la situación de este caso en particular. La sección núm. 238-B presenta una forma de precaver que una línea se active en caso de que un cable superior se estire y la toque. Este sistema no resuelve el problema cuando lo que sucede es que el impacto de un auto rompe un poste de sostén y provoca que el cable energizado se enrede con un tensor que va del poste principal al de sostén.

Por otro lado, el propio perito de los demandantes declaró que:

> El hecho de que se le haya hecho una instalación de acuerdo con ese código no quiere decir que esa instalación se haya hecho de una manera que evite que ocurra algún accidente. Me explico. Si la instalación de la línea de transmisión se hizo siguiendo el National Electric Safety Code que es aplicable a las líneas de transmisión . . . o una serie de códigos que regulan todo lo que tiene que ver con generación, producción y transmisión de electricidad; pues el código le puede decir, bueno si al instalar una línea de transmisión, usted tiene que instalar un aislador de "fiber-

glass" en el tensor que está conectado a la línea de 38,000, si usted va a instalar un tensor a una línea que tiene 4,000 pues usted le instala a ese tensor un aislador que tenga, que esté diseñado para una línea que tenga de 4,160 voltios, pues entonces usted tiene que coger las dos especificaciones y juntarlas para cuando es un caso combinado como éste. Es posible que el código tenga sus párrafos para una línea de transmisión y el código tenga [en sus ] otras partes la parte para [voltaje más bajo], de manera que en un caso como éste mi opinión es de que hay que [seguir] las dos [cosas]. . . . Si la Autoridad no lo hace y si el código de electricidad de la Autoridad no lo especifica bien, pues pueden ocurrir cosas como las que pasaron en este caso de que aún teniendo los aisladores se electrificó un tensor y mata a una persona o dos, y esto lo que evita, lo que está detrás del todo de la norma esta, de los códigos de electricidad, es proteger vidas y hacer que la transmisión de energía se haga de una manera segura y eficiente.

 Ahora bien, suponiendo que la Autoridad no hubiese cumplido con los dictámenes del Código, lo cual no ocurrió, el hecho de que se haya cumplido cabalmente o no con las normas de seguridad no es determinante de que la Autoridad pueda o no ser responsable por los daños. Hemos reconocido que el hecho de que no se cumpla con alguna disposición de ley, reglamento o norma establecida no es motivo para que se tenga que responder civilmente por un daño, a menos que exista una conexión causal entre dicha violación o quebranto y la lesión o el daño causado. *Ramos Oppenheimer* v. *Leduc*, 103 D.P.R. 342 (1975); *El Pueblo* v. *Vargas*, 30 D.P.R. 513 (1922). *Cf. Méndez Purcell* v. *A.F.F.*, 110 D.P.R. 130 (1980).

 Un examen minucioso de la evidencia que tuvo el tribunal ante su consideración nos convence de que la demandada razonablemente no podía prever el accidente objeto de este pleito. La estructura eléctrica no se encontraba en una área urbana, sino por el contrario, en una zona rural, a una distancia considerable de la vía de rodaje. La parte demandante nos señala que es previsible

que los automóviles que discurren por nuestras carreteras impacten los postes del alumbrado y, por consiguiente, que las líneas eléctricas se caigan. Esto es correcto, pero es una situación que no puede ser evitada razonablemente por la Autoridad. Sin embargo, la previsión en este caso no consistía en si un automóvil podía impactar el poste o no, sino en si al desprenderse los tensores había la *probabilidad* de que éstos se enredaran *de tal forma* que los aisladores no pudiesen cumplir su función. Razonablemente esto no podía preverse.

No podemos compartir el criterio del tribunal sentenciador al imputarle negligencia a la Autoridad. Ésta razonablemente cumplió con todas las exigencias posibles, para evitar que los cables tensores viniesen en contacto con las líneas vivas. No había nada que pudiera hacer la Autoridad para impedir que el tensor superior se enredara con el inferior, se partiese el poste de sostén y ambos cayeran a la vía de rodaje. Cabe señalar que muy bien el poste electrificado pudo caerse también con el impacto. Si los dos cables tensores no se hubiesen enredado más allá del aislador de bola que poseía el inferior, la electricidad no hubiese discurrido hacia la tierra. El que se instalara otro aislador al tensor superior no garantizaba necesariamente que al enredarse los cables la electricidad no se transmitiría a tierra.

Recordemos lo que dijimos en *Rosado* v. *Ponce Railway & Light Co.*, supra, a la pág. 645, "[e]s muy fácil examinar cualquier accidente y encontrar por lo menos una docena de medios por los cuales hubiera podido evitarse. Como ha dicho David Crockett: 'Si supiéramos de antemano lo que luego sabemos, nunca dejaríamos de estar en lo seguro' ".

Lamentablemente estamos ante un accidente desgraciado, en el que una familia ha perdido a un ser querido al éste actuar como el buen samaritano en ayuda del prójimo. Esto, sin embargo, no es fundamento legal para responsabilizar a la demandada en ausencia de negligencia en sus

actuaciones. Recordemos nuevamente que la Autoridad no es un asegurador de sus líneas.

*Por los fundamentos expuestos se revocará la sentencia dictada por el tribunal de instancia y se dictará otra en que se declare sin lugar la demanda.*

El Juez Asociado Señor Negrón García no interviene.