# 2000 DTA 175

### TRIBUNAL DE CIRCUITO DE APELACIONES
### CIRCUITO REGIONAL IV DE AGUADILLA Y MAYAGUEZ

HUMBERTO PEDROZA LOPEZ, *ET. ALS.*
Demandantes-Apelantes

v.

AUTORIDAD DE ENERGIA ELECTRICA; PUERTO RICO TELEPHONE CO.; UNIVERSAL INSURANCE CO.; GENERAL ACCIDENT INSURANCE CO.; *ET. ALS.*
Demandados-Apelados

Núm. KLAN-98-01090

San Juan, Puerto Rico, a 15 de agosto de 2000

Panel integrado por su Presidente, el Juez Brau Ramírez
y los Jueces Martínez Torres y Rodríguez García

Martínez Torres, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

En el recurso de apelación ante este foro, presentado el 11 de septiembre de 1998, la parte demandante-apelante solicita la revocación de la sentencia dictada el 24 de septiembre de 1997 por el Tribunal de Primera Instancia, Sala Superior de Aguadilla (Hon. Miguel A. Montalvo Rosano, Juez). En dicha sentencia, el tribunal declaró sin lugar la demanda en daños y perjuicios presentada por el Sr. Humberto Pedroza López, la Sra. Sandra Colón González y la Sociedad Legal de Bienes Gananciales compuesta por ellos, por sí y en representación de sus hijos menores de edad Rosaura, José Alberto, María y Benjamín Pedroza Colón, contra la Autoridad de Energía Eléctrica (A.E.E.) y la Puerto Rico Telephone Company (P.R.T.C.) y sus respectivas compañías aseguradoras. Luego de analizar detenidamente el recurso ante nos, y de evaluar la transcripción de la regrabación de la vista, resolvemos revocar la sentencia apelada en cuanto a la A.E.E. y confirmar en cuanto a la P.R.T.C.

### I

Los hechos que dieron base a esta demanda ocurrieron el domingo 15 de mayo de 1994 frente al edificio número veinticinco (25) del Residencial Los Ducos, en un sector de la marginal que corre paralelamente a la carretera número ciento siete (107) que va de Aguadilla a la Base Ramey. Según las determinaciones de hechos que hizo el Tribunal de Primera Instancia, aproximadamente a las tres de la tarde (3:00 p.m.) de ese día, un cable del tendido eléctrico se desprendió quedando colgado y con una punta de un cable con electricidad a una distancia aproximada del suelo de dos a tres (2 a 3) pies, cayendo también al suelo un poste telefónico.

Según la prueba creída por el tribunal, el despacho de la A.E.E. en Aguadilla recibió una llamada del policía Acevedo a las seis y treinta de la tarde (6:30 p.m.), ▮ informando sobre el poste caído. Aproximadamente quince (15) minutos después de la llamada del policía, el Sr. Héctor Alvarez Cabrera, Supervisor de Brigadas de la A.E.E., se presentó al lugar. Allí corroboró que el poste caído era de la P.R.T.C., y observó que el ingeniero

José Hernández González de la P.R.T.C. estaba en el lugar verificando la situación. Testificó que se marchó del lugar al no encontrar conductores de la A.E.E. en el piso.

A las siete y veinticinco de la noche (7:25 p.m.), el despacho de la A.E.E. recibió una llamada del Sr. José Ramos Cortés, residente del edificio veinticuatro (24) del Residencial Los Ducos, informando que no había servicio de energía eléctrica en su edificio. El despacho de la A.E.E. recibió otra llamada, igual a la anterior, a las siete y cuarenta de la noche (7:40 p.m.).

En el período de tiempo entre las siete y ocho de la noche (7:00-8:00 p.m.), los menores demandantes-apelantes Rosaura y José Alberto Pedroza Colón iban de camino al colmado para hacerle un mandado a su madre. Según la prueba creída por el tribunal, los menores caminaban inocentemente por el área en donde se encontraba caído el cable energizado. José Alberto hizo contacto con el cable, recibiendo un impacto que lo lanzó al suelo, y su hermana Rosaura al tocar a José Alberto para auxiliarlo recibió otro impacto, lanzándola también al pavimento. Los menores fueron llevados en ambulancia hasta el Hospital Sub-Regional de Aguadilla donde recibieron atención médica por el médico de turno y luego dados de alta.

Nuevamente, el despacho de la A.E.E. recibió otra llamada a las ocho y treinta y cinco de la noche (8:35 p. m.), esta vez informando que el poste telefónico caído había sido impactado por un auto, informó sobre los cables en el piso y sobre el accidente de los niños. El Policía que investigó este accidente de auto, sólo testificó que a eso de las seis y media de la tarde (6:30 p.m.), el Sr. José Villanueva impactó los cables de la P.R.T.C. que estaban colgando en el área del poste caído. Luego de esta última llamada, los empleados de la A.E.E. regresaron al lugar, en esta ocasión para realizar las reparaciones necesarias.

El 28 de junio de 1994, el Sr. Humberto Pedroza López y la Sra. Sandra Colón González, padres de los menores accidentados, por sí y en representación de sus hijos menores de edad, presentaron demanda contra la A.E.E. y la P.R.T.C. y sus respectivas compañías aseguradoras. Alegaron que los empleados de la A.E.E. comparecieron al lugar de los hechos alrededor de las seis de la tarde (6:00 p.m.) y se fueron rápido sin hacer reparaciones. Los demandantes-apelantes alegaron que los empleados de la A.E.E. volvieron a las once de la noche (11:00 p.m.) a realizar las reparaciones, tres horas después que los menores Rosaura y José Alberto se accidentaran con el cable de electricidad. En cuanto a la P.R.T.C., alegaron que el poste que rompió y causó el corte del cable eléctrico se encontraba bajo el control de esta compañía. Arguyeron que el accidente se debió única y exclusivamente a la culpa y negligencia de los demandados, quienes a través de sus empleados provocaron una situación altamente peligrosa. Alegaron que como resultado de la acción negligente de los demandados, los menores Rosaura y José Alberto han sufrido graves daños físicos, además de profundas angustias mentales y emocionales sufridas por todos los demandantes.

Los co-demandados-apelados contestaron la demanda oportunamente, negando las imputaciones alegadas. La A.E.E. reconvencionó contra los demandantes-apelantes, padres de los menores accidentados, por no cumplir con su deber de vigilancia y supervisión. Por su parte, la P.R.T.C. presentó demanda contra co-parte contra la A.E.E.. Tanto la reconvención como la demanda contra co-parte fueron debidamente contestadas.

Luego de varios trámites procesales, la vista en su fondo se llevó a cabo en varias fechas comenzando el 1ro. de mayo de 1996 y terminando a finales del mes de agosto de 1997.

Como parte de la prueba de la co-demandada-apelada A.E.E., se presentó el testimonio del Ingeniero Rafael Cruz Román. Mediante este testimonio se intentó establecer que un segundo accidente en el lugar de los hechos había sido la causa de que el cable de la A.E.E. partiera y quedara colgando; cable con el cual eventualmente se accidentaron los niños. El Ingeniero Cruz Román testificó que, según la investigación que hizo, el auto conducido por el Sr. José Villanueva, al impactar los cables telefónicos caídos en el área del poste averiado de la P.R.T.C., provocó una tensión adicional en las líneas telefónicas y eléctricas que se sostenían de los postes mancomunados. Esto causó un corto circuito que tuvo como consecuencia la rotura y caída del cable eléctrico

con el cual se accidentaron los menores José Alberto y Rosaura. Alegó la co-demandada-apelada A.E.E. que este segundo accidente fue una causa interventora que puso en marcha una cadena de eventos que provocaron el desprendimiento del cable eléctrico y, finalmente, el contacto de los menores con este cable, por lo que no debía responder la A.E.E..

Luego de que todas las partes presentaran su prueba documental, testifical y pericial, el Tribunal de Primera Instancia dictó sentencia el 24 de septiembre de 1997, declarando sin lugar la demanda en cuanto a ambos demandados. El tribunal determinó que no existía relación causal entre los daños alegados y las actuaciones de las co-demandadas, ya que lo sucedido a los menores Rosaura y José Alberto no era un hecho que fuese previsible.

Los demandantes-apelantes solicitaron al Tribunal de Primera Instancia nuevas determinaciones de hecho y conclusiones de derecho, y reconsideración de la sentencia dictada, lo que el tribunal, luego de analizar la totalidad del expediente, declaró sin lugar.

Inconformes con el dictamen del foro de instancia, recurren ante nos los apelantes cuestionando, en síntesis, la determinación del tribunal apelado de no adjudicar la causa de acción a su favor, por lo cual nos solicita la revocación de la sentencia dictada y que se declare con lugar la demanda.

Luego de un largo y difícil proceso para aprobar una Exposición Narrativa de la Prueba, las partes finalmente estipularon una transcripción de la grabación de la vista a través de taquígrafo privado, para así quedar perfeccionado el recurso de apelación ante este foro.

Este Honorable Tribunal le concedió a las demandadas-apeladas A.E.E. y P.R.T.C. hasta el 10 de abril de 2000 para que sometieran sus respectivos alegatos en oposición a la apelación. Estas solicitaron prórroga y comparecieron el 5 de mayo de 2000. Así sometido el recurso ante nuestra consideración, estamos en posición de resolver, según lo expresado a continuación.

## II

Al considerar el recurso de apelación presentado ante nos, es necesario evaluar las determinaciones de hecho y las conclusiones de derecho que hizo el Tribunal de Primera Instancia. Es preciso, pues, destacar en este momento que el alcance de la revisión judicial sobre cuestiones de hecho está regulado por lo dispuesto en la Regla 43.2 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III. Esta, en lo pertinente, dispone que las determinaciones de hechos basadas en testimonio oral no se dejarán sin efecto a menos que sean claramente erróneas, y se dará la debida consideración a la oportunidad que tuvo el tribunal sentenciador para juzgar la credibilidad de los testigos. Respecto a la revisabilidad de la apreciación de prueba testifical, es norma claramente establecida aquélla que nos limita intervenir con la apreciación que de la prueba haya hecho el Tribunal de Primera Instancia, en ausencia de pasión, prejuicio, parcialidad o error manifiesto. *Rolón García v. Charlie Car Rental, Inc.*, Opinión de 2 de junio de 1999, ___ D.P.R. ___(1999), **99 J.T.S. 89,** a la pág. 1099; *Blás Toledo v. Hospital Nuestra Señora de la Guadalupe*, Opinión de 30 de junio de 1998, ___ D.P.R. ___ (1998), **98 J.T.S. 101,** a la pág. 1427; *Mercado Riera v. Universidad Católica de P.R.*, Opinión de 27 de junio de 1997, ___ D.P.R. ___ (1997), **97 J.T.S. 106,** a la pág. 1274; *Rivera Pérez v. Cruz Corchado,* 119 D.P.R. 8, 14 (1987). En cuanto a la prueba documental y pericial, es principio ampliamente reconocido que este Tribunal está en igual posición para evaluarla que el tribunal apelado. Con relación a la evaluación de la evidencia pericial, los tribunales apelativos están en iguales condiciones que el Tribunal de Primera Instancia, y en libertad de adoptar su propio criterio. *Dye Tex Puerto Rico, Inc. v. Royal Insurance*, Opinión de 20 de marzo de 2000, ___ D.P.R. ___ (2000), **2000 J.T.S. 67**; *Culebra Enterprises Corp. v. E.L.A.,* Opinión de 31 de octubre de 1997, ___ D.P.R. ___ (1997), **97 J.T.S. 128**; *Díaz García v. Aponte Aponte,* 125 D.P.R. 1, 13 (1989); *Prieto v. Maryland Casualty Co.,* 98 D.P.R. 594, 623 (1970).

## III

En Puerto Rico, la responsabilidad civil derivada de actos u omisiones culposas o negligentes se rige por lo dispuesto en el Artículo 1802 del Código Civil de Puerto Rico. 31 L.P.R.A. sec. 5141. *Montalvo Feliciano v. Cruz Concepción*, Opinión de 4 de febrero de 1998, \_\_\_ D.P.R. \_\_\_ (1998), **98 J.T.S. 6**, a la pág. 499; *Toro Aponte v. E.L.A.*, Opinión de 31 de enero de 1997, \_\_\_ D.P.R. \_\_\_ (1997), **97 J.T.S. 18**, a la pág. 627; *Elba A.B. M. v. U.P.R.*, 125 D.P.R. 294, 308 (1990). Para que surja una causa de acción bajo este artículo, es necesario que ocurra una acción u omisión culposa o negligente, un daño, y que exista una relación o nexo causal entre el daño y la conducta culposa o negligente. *Blás Toledo v. Hospital Nuestra Señora de la Guadalupe, supra*, a la pág. 1432; *Montalvo Feliciano v. Cruz Concepción, supra; Toro Aponte v. E.L.A., supra; Ramírez Salcedo v. E. L.A.*, Opinión de 19 de marzo de 1996, \_\_\_ D.P.R. \_\_\_ (1996), **96 J.T.S. 41**, a la pág. 866; *Tormos Arroyo v. Departamento de Instrucción*, Opinión de 13 de marzo de 1996, \_\_\_ D.P.R. \_\_\_ (1996), **96 J.T.S. 34**, a la pág. 806.

Por tanto, para imponer responsabilidad a las co-demandadas A.E.E. y a la P.R.T.C. en el caso de autos, debemos analizar si se cumplieron cada uno de los requisitos exigidos por el ordenamiento jurídico, en cuanto a cada una de las co-demandadas. Por entender que la complejidad del caso así lo amerita, discutiremos cada uno de los requisitos por separado.

### A. Acción u omisión culposa o negligente

La culpa o negligencia se define como la falta del debido cuidado que consiste en no anticipar y prever las consecuencias racionales de un acto, o de la omisión de un acto, que una persona prudente habría de prever en las mismas circunstancias. *Montalvo Feliciano v. Cruz Concepción, supra; Ramos v. Carlo*, 85 D.P.R. 353, 358 (1962). Este deber de anticipar y prever los daños no se extiende a todo peligro imaginable, sino a aquél que llevaría a una persona prudente a anticiparlo. *Blás Toledo v. Hospital Nuestra Señora de la Guadalupe, supra*, a la pág. 1432; *Elba A.B.M. v. U.P.R., supra*, a la pág. 309; *Hernández v. La Capital*, 81 D.P.R. 1031 (1960). De igual forma, tampoco es necesario que se haya anticipado la ocurrencia del daño en la forma precisa en que ocurrió; basta con que el daño sea una consecuencia natural y probable del acto u omisión negligente. *Tormos Arroyo v. Departamento de Instrucción, supra*.

La negligencia por omisión genera responsabilidad civil, si tal conducta constituye el quebrantamiento de un deber de cuidado impuesto o reconocido por ley, y si de haberse realizado el acto omitido, se hubiera evitado el daño. *Toro Aponte v. E.L.A., supra; Tormos Arroyo v. Departamento de Instrucción, supra; Arroyo López v. E.L.A.*, 126 D.P.R. 682, 686 (1990); *Soc. Gananciales v. G. Padín Co., Inc.*, 117 D.P.R. 94, 106 (1986). Herminio Brau del Toro, *Los daños y perjuicios extracontractuales en Puerto Rico*, San Juan, **Publicaciones J. T.S.**, Vol. I, pág. 173.

Por otro lado, reiteradamente se ha reconocido el carácter inherentemente peligroso de la energía eléctrica y el deber de cuidado que tienen las personas o empresas encargadas de su distribución de velar y mantener sus instalaciones de alto voltaje. *Torres Solís v. A.E.E.*, Opinión de 7 de junio de 1994, \_\_\_ D.P.R. \_\_\_ (1994), **94 J.T.S. 89**, a la pág. 12040; *Vda. de Dávila v. Fuentes Fluviales*, 90 D.P.R. 321 (1964); *Ramos v. Aut. Fuentes Fluviales*, 86 D.P.R. 603 (1962). Estas deben ejercitar el más alto grado de cuidado para evitar causar daño, atendido el carácter inherentemente peligroso de este elemento. Este deber de cuidado no se limita a la instalación, mantenimiento y operación de sus plantas generadoras de electricidad y las líneas que la conducen, sino que también incluye *"la obligación de realizar una inspección adecuada para descubrir defectos y situaciones de peligro o riesgo para el público." Ramos v. Aut. Fuentes Fluviales, supra*, a la pág. 609. Es cierto que las compañías dedicadas a dar servicio de energía eléctrica *"No tienen la responsabilidad de un asegurador y, por tanto, no responden en cualquier caso en que se cause un perjuicio"*. Estas sólo responderán cuando *"el daño haya sido producido por su culpa o negligencia al omitir desplegar un grado de cuidado en proporción al riesgo o peligro envuelto". Vda. de Dávila v. Fuentes Fluviales, supra*, a la pág. 325; *Ramos v. Aut. Fuentes Fluviales, supra; Burgos Quiñones v. Autoridad de Fuentes Fluviales*, 90 D.P.R. 613 (1964);

*Ramos v. Aut. Fuentes Fluviales, supra; Matos v. P.R. Ry., Lt. & P. Co.*, 58 D.P.R. 161 (1941). El deber de una compañía de electricidad que mantiene alambres transmisores de corriente de alta tensión en sitios donde el público tiene el derecho de estar y existe la probabilidad de que vengan en contacto con tales alambres, es proteger al público contra ellos, aislándolos de manera efectiva o proveyendo otros medios de protección. *Pacheco v. A.F.F.*, 112 D.P.R. 298, 299 (1982)*; Vda. de Dávila v. Fuentes Fluviales, supra; Matos v. P.R. Ry., Lt. & P. Co.*, 58 D.P.R. 161, 164 (1941). No es indispensable que se protejan las líneas en forma tal que se elimine toda posibilidad de causar daños; la obligación consiste en tomar aquellas precauciones que aseguren contra las probabilidades de riesgos y peligros. *Ramos v. Aut. Fuentes Fluviales, supra.*

Es forzoso concluir que en el caso de autos, la A.E.E. tenía el deber de mantener sus líneas eléctricas en condiciones tales que no representaran un peligro para el público y la obligación de realizar una inspección adecuada para descubrir defectos y situaciones de peligro.

Según la prueba creída por el Tribunal de Primera Instancia, la situación del poste telefónico caído y el cable colgando con una punta con electricidad a 2 ó 3 pies del piso, existía desde la tres de la tarde (3:00 p.m.). Aun cuando el ingeniero Alvarez Cabrera, empleado de la A.E.E., acudió rápidamente al lugar por motivo de la primera llamada recibida en el despacho, la falta de diligencia de la A.E.E. consistió en no realizar una inspección adecuada, una vez llegó al lugar de los hechos. De haberse realizado una inspección adecuada, es muy probable que el ingeniero Alvarez Cabrera hubiese visto el cable con electricidad con el cual se accidentaron los menores que, según la prueba desfilada, se encontraba a unos 150 ó 200 pies del poste telefónico caído. Según su propio testimonio, el ingeniero Alvarez Cabrera se marchó del lugar al ver que el empleado de la P.R.T.C. atendía la situación del poste caído y al no observar cables eléctricos en ese lugar.

En el presente caso, el tribunal de instancia encontró probados unos hechos que, a nuestro parecer, dan lugar a una determinación de negligencia por parte de la A.E.E. Sin embargo, el Tribunal de Primera Instancia concluyó que no había nexo causal entre las actuaciones de los co-demandados y los daños alegados. Es necesario, pues, para imponer responsabilidad, evaluar si se cumplieron los demás requisitos que exige la doctrina del Artículo 1802 del Código Civil, *supra.*

## B. La existencia de un daño real

Desde principios de siglo, nuestra doctrina jurisprudencial ha expandido paulatinamente los parámetros de lo que constituyen daños compensables con miras a lograr la más completa y justiciera reparación del daño inferido. El concepto de daño se ha caracterizado como *"el menoscabo que a consecuencia de un acontecimiento o evento determinado sufre una persona, ya en sus bienes vitales naturales, ya en su propiedad o en su patrimonio"*. *Galib Frangie v. El Vocero*, Opinión de 6 de junio de 1995, ___ D.P.R. ___ (1995), **95 J. T.S. 71**, a la pág. 924; *Soto Cabral v. E.L.A.*, Opinión de 21 de abril de 1995, ___ D.P.R. ___ (1995), **95 J.T.S. 49**, a la pág. 813; *García Pagán v. Shiley*, 122 D.P.R. 193, 205-206 (1988).

Se considera un daño, todo menoscabo material o moral que sufre una persona en sus bienes naturales, propiedad o patrimonio, ocasionado en contravención a una norma jurídica y por el cual ha de responder otra. *Cintrón Adorno v. Gómez*, Opinión de 22 de febrero de 1999, ___ D.P.R. ___ (1999), **99 J.T.S. 20**, a la pág. 619.

La necesidad de indemnizar por daños en nuestro ordenamiento, no es *ad infinitum;* hemos de recordar que nuestra sociedad refleja un apetito voraz hacia lo material, y no podemos convertir el dolor, el sufrimiento, la tristeza, el desamparo y la frustración, en simplemente otro bien de consumo y tráfico comercial. La indemnización por daños tiene que corresponder a la prueba. *Cintrón Adorno v. Gómez, supra*, a la pág. 615; *Quiñones López v. Manzano Pozas*, Opinión de 25 de junio de 1996, ___ D.P.R. ___ (1996), **96 J.T.S. 95;** *Torres Solís V. A.E.E., supra.* Para indemnizar un daño, hay que realmente sufrirlo y probarlo. En cuanto a los daños morales, como son el dolor, los sufrimientos y angustias mentales, también son compensables en la

medida en que el perjudicado aporte evidencia de cómo su salud, bienestar y felicidad quedó afectada. *Ramos Rivera v. E.L.A.*, 90 D.P.R. 828, 831 (1964)

Analizando la prueba presentada por los demandantes-apelantes sobre los daños alegados en el caso de autos, debemos señalar que ésta fue suficiente como para establecer la ocurrencia de un daño real. Aun cuando el testimonio del perito médico, Dr. Edward Igartúa Juliá, presentado por los demandantes-apelantes, nos parece exagerado, además de no estar sostenido por la literatura médica que obra en el expediente ante nos, los hechos incontrovertidos en este caso son suficientes para establecer que los apelantes sí sufrieron daños. Los menores Rosaura y José Alberto hicieron contacto con un cable energizado y cayeron al piso luego de hacer contacto con el cable. Los menores tuvieron que ser transportados ese día al Hospital Sub-Regional de Aguadilla para recibir atención médica. Según el récord médico de José Alberto, éste presentaba trauma en la cabeza, por lo cual le tomaron radiografías, le aplicaron inyecciones y le recetaron medicamentos. Tanto José Alberto como Rosaura recibieron atención medica posterior. Afortunadamente, estos menores no sufrieron graves quemaduras en su cuerpo como suele suceder en estos casos. Sin embargo, el hecho de que sus heridas no hayan sido catastróficas, no exime a los responsables de causar el daño de su obligación de resarcir a los perjudicados por los daños verdaderamente causados. Por tanto, la indemnización en daños que hoy concedemos es una razonable basada en aquellos daños realmente sufridos y probados. Es lógico pensar, y la prueba así lo estableció, que los padres de los menores accidentados sufrieron al ver a sus hijos pasar por este angustioso suceso.

### C. Nexo causal entre el daño y la conducta culposa o negligente

En nuestra jurisdicción, rige la doctrina de causalidad adecuada. Conforme a ella, no es causa toda condición sin la cual no se hubiera producido el daño, sino la que ordinariamente lo produce según la experiencia general. Es cuando el daño parece ser el resultado natural y probable de un acto negligente, si después del suceso y mirando retroactivamente el acto que se alega es negligente, el daño aparece como la consecuencia razonable y ordinaria del acto. *Montalvo Feliciano v. Cruz Concepción, supra; Toro Aponte v. E. L.A., supra; Miranda v. E.L.A,.,* Opinión de 7 de diciembre de 1994, ___ D.P.R. ___ (1994), **94 J.T.S. 152;** *Jiménez v. Pelegrina Espinet,* 112 D.P.R. 700 (1982). No se le imputará responsabilidad al suplidor de energía eléctrica sin que quede establecida la relación causal entre el daño ocurrido y la instrumentalidad propiedad de y bajo el control de la demandada, y demostrar, por la preponderancia de la prueba, que el daño fue producido por la culpa o negligencia de la demandada al no desplegar un grado de cuidado proporcional al riesgo envuelto. *Burgos Quiñones v. A.F.F.,* 90 D.P.R. 613, 619 (1964).

En el caso de autos, surge del expediente que los empleados de la Autoridad de Energía Eléctrica llegaron hasta el área donde se encontraba el cable energizado colgando en horas de la tarde y se marcharon del lugar sin hacer reparaciones, ya que alegaron no haber visto ningún cable perteneciente a la A.E.E.. Conforme a lo anterior, es forzoso concluir que el Tribunal de Primera Instancia tuvo ante sí prueba suficiente que, al ser creída, establece la relación causal entre el acto de negligencia de la Autoridad y el daño sufrido por los apelantes. Al analizar el expediente que obra en autos, resulta fácil concluir que la omisión por parte de la Autoridad, primero al no realizar una inspección adecuada, y segundo, al no reparar el cable averiado, fue la causa eficiente que ocasionó que los menores Rosaura y José Alberto sufrieran daños al hacer contacto con el cable energizado.

Por otro lado, la A.E.E. tenía el peso de la prueba para establecer la existencia de una causa interventora. No obstante, la A.E.E. no presentó prueba específica sobre la situación en que se encontraban los cables eléctricos antes del segundo accidente, y no demostró de ninguna forma que la situación de peligrosidad no existía antes de este suceso. El Tribunal de Primera Instancia en efecto creyó que el cable eléctrico estaba colgando desde las 3:00 p.m. a 2 ó 3 pies de altura, provocando la situación de peligrosidad que presentaban los cables eléctricos caídos. La ausencia de prueba por parte de la A.E.E. a los efectos de establecer que el accidente de carro del señor Villanueva impactando los cables telefónicos fuese el evento que con más probabilidad causó la situación de peligrosidad, no nos permite acoger la defensa de la existencia de una causa

interventora.

## IV

Concluimos, pues, que la A.E.E. no ejerció el grado de cuidado necesario para evitar el accidente ocurrido. Este accidente resultaba ser totalmente previsible ante las circunstancias que rodean el caso de autos. En vista de lo antes expuesto, valoramos los daños físicos y angustias mentales sufridos por los demandantes-apelantes de la siguiente forma: $4,000 para el menor José Alberto Pedroza Colón, $3,000 para la menor Rosaura Pedroza Colón, $1,000 para el padre Humberto Pedroza López, y $1,000 para la madre Sandra Colón González. Los hermanos menores de los perjudicados, María y Benjamín Pedroza Colón, reclamaron daños, pero no presentaron prueba al respecto. Por lo tanto, no es posible compensarles.

## V

En cuanto a la responsabilidad que se le imputa a la P.R.T.C., evaluados los hechos a la luz de la doctrina del Artículo 1802 del Código Civil, *supra*, antes esbozada, concluimos que no se cumplieron los requisitos que el ordenamiento exige. Según la prueba desfilada, la causa de los daños recibidos por los menores Rosaura y José Alberto fue el impacto que recibieron al hacer contacto con el cable energizado que por omisión negligentemente los empleados de la A.E.E. dejaron colgando en un lugar por donde diariamente transitan cientos de personas. Por lo tanto, no existe nexo causal entre las actuaciones de la co-demandada P.R.T.C. y los daños sufridos por los demandantes-apelantes. Aun si asumiéramos que el poste telefónico averiado estaba en malas condiciones e incorrectamente instalado, y que la caída del poste fue lo que provocó que el cable de la A. E.E. se desprendiera, hechos que entendemos no fueron probados, la P.R.T.C. fue diligente en resolver la situación.

## VI

En vista de lo antes expresado, y conforme al derecho citado, se modifica la sentencia apelada y en su lugar se dicta otra condenando a la demandada-apelada Autoridad de Energia Eléctrica a pagar a los demandantes-apelantes la suma total de $9,000 en resarcimiento por los daños sufridos. Por otro lado, se confirma la sentencia desestimando la demanda contra la Puerto Rico Telephone Company.

Lo acordó y ordena el Tribunal y lo certifica la Subsecretaria General.

Gladys E. Ortega Ramírez
Subsecretaria General