Eduardo Arreche Cuevas, demandante y apelado, *v.* Porto Rico Railway, Light & Power Co., demandada y apelante.

No. 4520—*Sometido:* Noviembre 22, 1928.   *Resuelto:* Diciembre 13, 1929.

J. H. Brown, G. E. González y C. Ruiz Nazario, abogados de la apelante; M. Benítez Flores, abogado del apelado.

El Juez Asociado Señor Aldrey, emitió la opinión del tribunal.

La muerte violenta del niño de cuatro años de edad Salvador Arreche ocurrió el 15 de noviembre de 1917 entre las seis y media y las siete de la tarde en la calle del Parque del barrio de Santurce de esta ciudad de San Juan, y el pleito por indemnización de perjuicios que originó estuvo en apelación en este tribunal (31 D.P.R. 445). Después, a fines del año 1925, el padre del niño presentó demanda enmendada alegando que su hijo fué muerto por un carro eléctrico de la demandada por la negligencia de sus empleados, porque caminaba a una velocidad excesiva, sin tocar campana de aviso, sin tener encendido el foco eléctrico de la plataforma delantera y sin detenerse ni reducir la velocidad de su marcha antes de llegar a las calles transversales Vereda Estrecha y Avenida Antonsanti. Se opuso la demandada a esa reclamación y celebrado el juicio recayó sentencia condenatoria contra la cual ha sido interpuesto este recurso de apelación.

Para la mejor inteligencia de cómo tuvo lugar esa muerte será conveniente que hagamos ahora una breve descripción del sitio donde el suceso se desarrolló y de ciertos hechos resultantes de la prueba.

En el barrio de Santurce hay una calle que pone en comunicación el sitio llamado El Parque con la carretera central en el lugar conocido por parada 23. A esa calle se le llama del Parque o de Egozcue. Yendo del Parque para la parada 23 existen varias paradas para coger y dejar pasajeros marcadas con los números 44 al 41, ambos inclusives, estando la primera cerca del Parque y la última inmediata a la parada 23, habiendo entre las 41 y la 23 un desvío de la línea férrea para el cruce de los carros eléctricos. La vía férrea está colocada en esa dirección al lado izquierdo de la calle y muy cerca de las casas que están en dicho lado. La parada 42½ es la más próxima anterior a la casa No. 21 en que al lado izquierdo vivía el apelado con su familia y al llegar a esa casa termina una pendiente que comienza en la parada 44. Entre la vía férrea y la cerca o muro de dicha casa existe

una distancia como de un metro y después de ella comienza
la Avenida Antonsanti a la derecha y muy poco después el
callejón Vereda Estrecha, que está a la izquierda. Después
se encuentra a alguna distancia el comienzo de la calle de
San Mateo, que es la parada 41, siguiendo entonces el desvío
y la parada 23 de la carretera. Entre la vía férrea y las
casas del lado izquierdo no hay acera. La casa No. 21 está
situada en un terreno alto y tiene una cerca o muro de mam-
postería de algunos pies de elevación que está cortado para
una escalera de cinco escalones que da acceso a la casa, es-
tando el primer escalón entre el muro que hace de cerca y
la vía férrea. Un niño de poca edad que baje por esa esca-
lera o que esté sentado en ella difícilmente puede ser visto
desde el carro eléctrico o por las personas que caminen por
el lado izquierdo. La casa en que vivía el niño Salvador
Arreche tiene balcón al frente de la calle en comunicación
con otro lateral. Frente a la casa hay una escuela pública
y en aquel sitio había un foco eléctrico que alumbraba la calle.

En la tarde y hora expresadas, entre claro y oscuro, ca-
minaba un carro eléctrico de la demandada desde el Parque
hacia la parada 23 subiendo la pendiente que hay en esa di-
rección, llevando sus luces interiores encendidas, habiéndose
detenido para coger dos pasajeros en la parada 42½ donde
desemboca por su derecha la calle del Hospital, que está
como a unos cincuenta metros antes de llegar a la casa No.
21. Prosiguió entonces su marcha, pasando por la Avenida
Antonsanti y el callejón Vereda Estrecha (parada 42) y por
la calle San Mateo (parada 41) yendo a detenerse en el cruce
o desvío a que antes nos hemos referido, donde el motorista,
el conductor y los pasajeros fueron enterados de que ese
carro eléctrico había arrollado al niño Salvador Arreche que
murió poco después por fracturas que sufrió. Resulta tam-
bién de la prueba que ese día y a la hora dicha no había mu-
cho tránsito de viandantes en aquel sitio y que no había cla-
ses en la escuela.

El tribunal inferior fundó su sentencia condenatoria en

que esa muerte se debió a la negligencia de los empleados de la demandada porque el carro eléctrico caminaba a una velocidad excesiva de nueve puntos al pasar frente a la casa del demandante sin que el motorista redujera la velocidad ni intentara reducirla; en que no hizo las paradas obligatorias de la 42 y de la calle San Mateo; en que no hizo parada ni redujo la velocidad al cruzar las bocacalles de la Avenida Antonsanti y del Callejón Vereda Estrecha; en que no hizo sonar la campana del tranvía ni dió señal de su aproximación; en que llevaba apagado el foco de la plataforma delantera, y en que en el momento de ocurrir el accidente y a pesar de los gritos de atención que dieron varias personas el motorista no detuvo su marcha hasta la parada 23. Dice también la corte inferior que el niño, que estaba con su hermana y una sirvienta de doce años en el balcón de la casa, bajó la escalera hasta llegar a la vía y que si el carro hubiera llevado luz el niño hubiese sido visto por el motorista y éste hubiera podido ejercer toda su buena diligencia para evitar el accidente. Esas conclusiones se alegan por la apelante como erróneas.

Por la prueba y por los fundamentos de la sentencia apelada hay que llegar a la conclusión de que el niño no fué visto en la vía férrea ni cerca de ella al ocurrir el accidente que produjo su muerte, así como que el motorista no iba distraído de su ocupación.

Si el carro eléctrico llevaba encendido o apagado el foco de luz de la plataforma delantera fué un hecho que resultó contradictorio en las declaraciones de los testigos, pero como el tribunal que celebró el juicio resolvió ese conflicto en sentido negativo tenemos que aceptar como cierto que esa luz no estaba encendida, ya que no hay motivos suficientes para declarar que no fué así.

El hecho de que el carro eléctrico que causó la muerte del niño no llevara encendido ese foco no puede ser considerado por sí solo como la causa originaria de la desgracia que ocurrió, dadas las circunstancias concurrentes entonces, ya

que el sitio donde tuvo lugar el accidente estaba bien alumbrado por un foco eléctrico público que estaba encendido en aquella ocasión, que permitía ver con bastante claridad estando apagado el foco del carro eléctrico, sin que de la prueba resulte la intensidad de la luz del foco delantero cuando éste se halle encendido y sin que se nos haya demostrado que alguna ley u ordenanza exija tal foco. En el caso de *El Pueblo* v. *Vargas,* 30 D.P.R. 513, hemos declarado que aunque la ley ordena que los automóviles que se dejan parados de noche en las calles, callejones o caminos sean dotados de luz, para evitar accidentes, su propósito queda cumplido aunque se dejen apagados si en el sitio hay luz bastante para hacerlos visibles.

Dado que el carro eléctrico se detuvo en la parada 42½ para tomar dos pasajeros, como cincuenta metros antes de llegar a la casa donde vivía el niño; que iba subiendo una pendiente que termina cerca de dicha casa; y que según algunos testigos cuando un carro eléctrico sube una pendiente no puede caminar a mucha velocidad ni aun abriendo el regulador de la velocidad hasta nueve puntos, lo que parece natural que así sea, creemos que era más razonable para el tribunal inferior decidir que el carro eléctrico no caminaba entonces a gran velocidad; pero aceptaremos la conclusión a que llegó de que caminaba a una velocidad excesiva de nueve puntos para decidir la cuestión que de tal hecho surge, a pesar de que las declaraciones de los testigos diciendo que el carro iba bastante ligero, a mucha velocidad, y otras frases similares son meramente relativas y completamente inciertas y dudosas para servir de base a la conclusión de que era en exceso de la velocidad que dicta y demanda la sana prudencia, según se dijo en el caso de *Diamond* v. *Weverhaenser,* 178 Cal. 540.

El caso de *Olavarría* v. *P. R. Ry., Light & Power Co.,* 26 D.P.R. 645, es bastante análogo al presente, pues se trataba también de un carro eléctrico de la misma demandada cuya vía está tendida en la carretera pública muy cerca de las

casas contiguas a ella, y en él declaramos que la mera gran velocidad para viajar los carros eléctricos no constituye negligencia *per se* sino que es preciso que concurra algún otro elemento, o que cuando menos debe justificarse que la excesiva velocidad fué la causa próxima del accidente, y que a falta de una expresa reglamentación que limite la velocidad de los carros urbanos, el mero hecho de que un carro corra a una gran velocidad no establece que se le corra negligentemente.

En este caso no fué la velocidad del carro la causa próxima de la muerte del niño, pues como no fué visto por el motorista antes del accidente hubiera ocurrido de igual manera aunque no hubiera marchado a gran velocidad. Nada hay tampoco en la prueba en este asunto sobre expresa reglamentación de velocidad en aquel sitio. Por igual motivo de no haber sido visto el niño, el motorista no detuvo ni trató de detener el carro en aquel sitio. Tampoco hay que tener en cuenta que dejara de hacer la parada obligatoria 42 y que no redujera la velocidad al pasar por las bocacalles de la Avenida Antonsanti y Vereda Estrecha porque estando todos esos sitios después de la casa del niño, tal hecho no puede ser la causa de su muerte. Tampoco es causa de lo ocurrido que después del suceso no tratara de parar el carro cuando le gritó alguien que lo detuviera, pues ya había ocurrido la desgracia, en el supuesto de que oyera ese dicho.

Con respecto a que el motorista no tocó la campana de aviso, sobre lo cual fué también contradictoria la prueba, no aparece de ésta que tuviera el deber impuesto por ley o por ordenanza de tocar la campana en aquel sitio ni en el resto de la calle, en la que la mayor parte de las casas están muy cerca de la vía en ese lado, ni tampoco resulta que si la hubiese tocado no hubiera sido arrollado el niño por el carro, teniendo en cuenta la edad de esa criatura.

Lo que resulta de este pleito es que estando el niño Salvador Arreche en el balcón del frente de su casa momentos antes de su muerte jugando con una hermanita y al cui-

dado de una sirvienta ésta lo dejó solo allí para ir en busca de la niña que se había ido para el balcón lateral y que entonces el niño bajó a la calle, bien para ir donde dos hermanos suyos que jugaban en la acera de la escuela, o por otro motivo propio de niños, en el preciso momento en que pasaba por allí el carro eléctrico de la apelante, sin ser visto por el motorista por la forma de la escalera que da a la calle y por la proximidad de la vía férrea y del carro a la cerca o muro de la casa; demostrando esos hechos que se trata de un accidente desgraciado que sin duda llorarán sus padres, en el que no tiene responsabilidad la apelante por no haber sido causada la muerte por culpa o negligencia de sus empleados.

*Por todo lo expuesto la sentencia apelada debe ser revocada y dictarse otra declarando sin lugar la demanda, sin especial condena de costas.*

El Juez Presidente Señor del Toro disintió.*

OPINIÓN CONCURRENTE DEL JUEZ ASOCIADO SEÑOR TEXIDOR

Conforme con el resultado; pero no con algunos motivos de la opinión.

En cuanto a que de la prueba no aparece que hubiera reglamentación expresa en cuanto a velocidad en el sitio en que ocurrió el accidente, ni aparece deber impuesto por ley u ordenanza, con respecto a tocar la campana en aquel sitio, si las hubieren, la falta a tales reglas y ordenanzas, constituiría culpa; y, de no haberlas, la falta cae dentro del concepto de negligencia, u omisión de la prudencia ordinaria requerida para evitar accidentes.