JUAN FIGUEROA LUGO y VICTORIA GUERRA ARCE, demandantes y apelados, *v.* AMERICAN RAILROAD CO. OF PORTO RICO, JORGE VEGA MERCADO y SIMÓN VIDOT RUAÑO, demandados y apelante la primera.

Núm. 8949.—*Sometido:* Noviembre 9, 1944. *Resuelto:* Diciembre 20, 1944.

*Mariano Acosta Velarde, Federico Acosta Velarde* y *Donald R. Dexter,* abogados de la apelante; *R. Atiles Moréu,* abogado de los apelados.

EL JUEZ PRESIDENTE SEÑOR TRAVIESO emitió la opinión del tribunal.

Con fecha 7 de mayo de 1942 Juan Figueroa Lugo y Victoria Guerra Arce, radicaron demanda de daños y perjuicios

contra "The American Railroad Company of Puerto Rico", Jorge Vega Mercado y Simón Vidot Ruaño, los dos últimos empleados de la primera. Alega sustancialmente la demanda que, (a) los demandantes son los padres legítimos de Gladys María Figueroa Guerra, de dos años once meses de edad, fallecida el día 27 de abril de 1942 a consecuencia de lesiones que sufriera el día antes, (b) que esas lesiones, que le causaron la muerte, fueron producidas por una locomotora propiedad de la demandada conducida por los empleados de ésta arriba mencionados, (c) que el accidente se debió a la negligencia de los empleados de la demandada al conducir a gran velocidad el tren que arrolló a la menor, sin que antes o después de pasar por el sitio del accidente diese aviso ni señal de clase alguna ni redujese la velocidad, ni tomase medidas razonables para evitar dicho accidente, (d) que con motivo de la muerte de la citada menor los demandantes han padecido sufrimientos morales, dolor físico y angustias mentales, así como se han visto privados del consuelo, asistencia y ayuda que dicha menor podría darles en el futuro, por todo lo cual solicitan una compensación de diez mil (10,000) dólares, costas y honorarios de abogado. La demandada contestó negando específicamente todos los hechos imputados en la demanda y alegando como materia nueva que, si en el accidente que motivó la muerte de la menor medió culpa o negligencia por parte de la demandada también medió culpa o negligencia contribuyente de los demandantes o de la menor y que esa culpa o negligencia de los demandantes o de la menor fué la causa próxima, única e inmediata del accidente y que por lo tanto, solicitaba que se declarase sin lugar la demanda con las costas y honorarios en contra de la parte demandante. Celebrada la vista del caso, y habiendo ambas partes presentado su prueba, la corte inferior decidió en favor de la demandante concediéndole tres mil ($3,000) dólares, en concepto de daños y perjuicios con imposición de las costas, más la suma de doscientos cincuenta ($250) dóla-

res para honorarios de abogado. La demandada ha interpuesto el presente recurso de apelación. Sostiene la parte apelante que la corte sentenciadora cometió manifiesto error de hecho y de derecho (1) al concluir que la niña Gladys María Figueroa Guerra recibió graves contusiones a consecuencia de las cuales falleció; (2) al concluir que la locomotora venía a gran velocidad; y (3) al resolver que la demandada fué culpable de negligencia y que esta negligencia fué la causa próxima del accidente.

En realidad los tres señalamientos envuelven la misma cuestión, o sea si la corte inferior erró en la apreciación de la prueba. Los consideraremos, pues, conjuntamente.

Un estudio cuidadoso de toda la prueba nos demuestra que los errores imputados no fueron cometidos. En relación con el primer error imputado, de los autos encontramos que se ofreció prueba documental y testifical en cuanto a la causa de la muerte. En primer lugar, hubo las declaraciones de dos testigos, Catalino Rivera Guilbe y Elena Vázquez Haro, quienes afirmaron haber visto cuando la locomotora le dió a la niña. Contra estas declaraciones se opusieron las de los testigos de la demandada, Raúl Morales y Carmen Delia Castro González, ambos pasajeros del tren que se alega que causó el accidente. El primero, al ser preguntado sobre lo que había pasado, dijo: "Que ví que se cayó, y cuando la gente gritó: 'mire, que mató a una niña', salimos varias personas a ver lo ocurrido"; y la segunda, preguntada si la máquina le dió o no a la menor Gladys Figueroa, dijo: "No sé si le dió o no le dió".

Tampoco creemos que se cometiera el segundo error imputado, ya que hubo prueba testifical sosteniendo que la locomotora venía a gran velocidad. Así lo declararon tres testigos de la demandante. No obstante los propios testigos de la demandada haber declarado que el tren sólo venía a veinticinco kilómetros por hora, de la declaración del maquinista se desprende que, habiéndosele advertido de la necesi-

dad de detenerse cuando la máquina estaba a la mitad del ranchón, el tren no paró hasta llegar frente a la casa del mayordomo, que queda a 52 metros del ranchón, el cual mide 33 metros de largo, o sea, que el tren se detuvo a 69 metros del sitio en que se le dió aviso para que parara. Sin duda alguna, esta circunstancia influyó en el ánimo del juez sentenciador para dar mayor credibilidad a las declaraciones de los testigos de los demandantes en cuanto a la velocidad del tren.

La corte inferior dió crédito a los testigos presentados por los demandantes para probar la excesiva velocidad a que marchaba la locomotora y el hecho de que ni antes ni después de pasar por el sitio del accidente se diese aviso o señal de clase alguna. Como nada hemos podido encontrar que justifique que variemos esa conclusión, ni que intervengamos con la apreciación de la prueba hecha por el tribunal inferior, esa apreciación debe ser respetada en apelación. El juez sentenciador ante el cual deponen los testigos, quien tiene la oportunidad que no tiene este Tribunal, de verlos y observar su manera de declarar, de poder apreciar sus contradiciones, dudas, vacilaciones, de ir formando gradualmente en su conciencia la convicción en cuanto a si hay o no derecho al remedio solicitado, es a quien la ley concede la facultad de pesar la prueba y de juzgar acerca de la credibilidad de los testigos y es por ello que creemos es nuestro deber no alterar en apelación sus conclusiones, a menos que se demuestre que actuó con manifiesto error o movido por pasión, prejuicio o parcialidad. *Gay* v. *Vega*, 39 D.P.R. 647; *Acosta* v. *P. R. Ry., Lt. & Power Co.*, 60 D.P.R. 867; *Méndez* v. *Sucesión Sella González*, 62 D.P.R. 345–350, y el caso de *Hernández* v. *Acosta y Maryland Casualty Co.*, ante, pág. 171.

■ Sostiene la demandada apelante que *ella no venía obligada a anticipar que había niños en el sitio del accidente*, ya que dicho sitio no era el cruce de una vía férrea con camino público, ni tampoco una zona urbana o una zona muy

poblada y que por lo tanto la corte inferior erró cuando dijo, que descansaba su decisión "en el extremo de que la demandada debió anticipar la presencia de niños en ese sitio no cercado". En apoyo de su contención citó los siguientes dos casos: *Arreche* v. *P. R. Railway, Light & Power Co.*, 40 D.P.R. 299 e *Imler* v. *Northern Pacific Railway Co.*, L.R.A. 1916 D 702. En el caso de *Arreche,* si bien los hechos ocurridos guardan cierta analogía con los de este caso, no tiene relación con los argumentos expuestos por la apelante en lo que concierne al error que se discute. En él. no se plantea ni se discute en momento alguno la necesidad de anticipar la presencia de menores en el lugar del accidente. Dicho caso más bien va dirigido a atacar cierta parte de la opinión del juez sentenciador, en que éste asume que las vías se construyeron después 'que el ranchón y por haberlas construído con posterioridad al ranchón, asume el riesgo de sus actuaciones. En el caso de *Imler* se sostuvo que,

"el mero hecho de que el maquinista pudiera ver claramente a lo largo de la vía, a una distancia mayor de una milla, eso por sí solo no hace responsable a la compañía por los daños ocasionados por uno de sus trenes al golpear a una persona que camina por dicha vía, si nada indica que esa persona se encontraba parada en la misma, en algún punto dentro de esa distancia, al acercarse el tren".

En este caso, Imler salió de su trabajo a eso del atardecer y se dirigió a su casa, que.quedaba como a milla y media. En determinado sitio, en el curso de su camino, entró a la vía del ferrocarril y siguió caminando por ella, siendo atrapado por un tren, como resultado de lo cual murió. Ni el contenido de la opinión citada, ni los hechos que dieron lugar a la misma, encontramos que. sean aplicables a lo que aquí se trata de resolver.

En el presente caso se trata de una niña de dos años once meses y se probó que el ranchón queda a 5 pies cuatro pulgadas de la vía; que la máquina sobresale a cada lado de

la vía 2 pies 4 pulgadas, o sea, que del extremo de la máquina a la esquina del ranchón en donde estaba parada la niña, sólo hay una distancia de 3 pies; que en esa esquina del ranchón más cercana a la vía es donde precisamente queda el cuarto en que viven los demandantes y vivía la menor fallecida; que en el ranchón viven otras familias con niños; que en los alrededores hay otras casas donde también hay niños, que en ese sitio no hay cerca alguna que separe la vía del ranchón; que para entrar o salir del ranchón hay que cruzar la vía, ya sea frente al mismo ranchón o por el paso a nivel cercano; que toda esa situación era y es bien conocida del maquinista y del conductor y por consiguiente de la demandada. En vista de esas circunstancias, ¿debió o no la demandada anticipar la presencia de menores en el sitio del accidente? La parte demandante sostiene que sí y en apoyo de la sentencia de la corte inferior cita, entre otros:

44 American Jurisprudence, páginas 659, 660, 661: "La compañía viene obligada a anticipar la presencia de personas en la vía (right of way) en cualquier sitio en que, con su conocimiento y aquiescencia, el público en número considerable, abierta, notoria y habitualmente cruza por o camina a lo largo de ella, aunque esta situación no se produzca junto a una carretera pública o un paso a nivel. Esto se encuentra a menudo en áreas densamente pobladas tales como ciudades y pueblos donde hay fácil acceso a las vías ([1]). Esta regla se aplica particularmente a situaciones donde hay un camino específico a lo largo o a través de la vía de una compañía de ferrocarriles, camino que se usa constantemente por muchas personas que no tienen relación alguna con la compañía, y de cuyo uso la compañía tiene conocimiento o se supone que lo tenga. ([2]) La aquiescencia o el consentimiento por parte de la compañía de trenes a tal uso puede presumirse cuando la compañía ha permitido al público usar sus vías en un paso a nivel o en una vereda durante cierto tiempo sin objeción alguna. ([3]) Tal uso puede ser tan prolongado que puede equipararse a una invitación implícita para usar

---

([1]) *Johnson* v. *Atlantic Coast Line R. Co.*, 59 Fla. 302, 51 So. 851.

([2]) *Pomponio* v. *N. Y., N. H. & H. R. R. Co.*, 66 Conn. 528, 32 L.R.A. 530.

([3]) *Thomas* v. *Chicago M. & St. P. R. Co.*, 103 Iowa 649, 72 N.W. 783, 39 L.R.A. 399.

la vía en dicho lugar a los fines de caminar por ella o de cruzarla, con las responsabilidades y riesgos concurrentes provenientes de la presencia de público por invitación implícita, a cargo de la compañía. De conformidad con este punto de vista, las cortes algunas veces basan sus decisiones no sobre la alteración del *status* proveniente de una invitación implícita, *sino sobre la responsabilidad que hay en cuanto a una persona cuya presencia se debe anticipar,* ya sea su status técnico el de un transgresor, el de uno a quien se le ha conferido permiso (licensee) o el de un invitado (invitee)." (*)

Nosotros, investigando sobre el punto, hemos encontrado en 44 American Jurisprudence 645, sección 427, lo siguiente:

". . . . . Si una compañía de trenes expresamente invita o *tácitamente permite* a algunas personas el frecuentar sus terrenos o estar cerca de su maquinaria, la compañía tiene con tales personas el deber, no solamente de evitarles daño cuando se hace patente su presencia, sino también *anticipar su presencia al tiempo dado o en el lugar donde tal invitación o permiso traería probablemente su presencia,* y debe tomar ciertas medidas aconsejables por la prudencia ordinaria para evitar que dichas personas sean lesionadas de estar de hecho presentes." (Bastardillas nuestras.) *Moody* v. *St. Louis, I.M. & S.Ry. Co.,* 89 Ark. 103, 115 S. W. 400.

Ninguna de las partes, a pesar de los extensos alegatos sometidos, ha mencionado el caso de *Ortiz* v. *American Railroad Co.,* 62 D.P.R. 181, a pesar de que en el mismo, en nuestra opinión, se resuelve la cuestión aquí planteada. En este caso de *Ortiz,* un menor de 21 años de edad fué arrollado por una locomotora como a las 7:30 de la noche, mientras caminaba por la vía en dirección contraria a la en que venía el tren. El trayecto por donde transcurre la vía en ese sitio es recto y no hay casas pegadas a la misma. Igualmente quedó demostrado que algunas tardes unos menores acostumbraban a jugar allí cerca de la vía. Concedida indemnización por la corte inferior, el caso se trajo en apelación y esta Corte resolvió, considerando las circunstancias prevalecientes en el mismo, que la compañía no venía obligada a anticipar la presencia de menores, diciendo a la página 191 que:

(*)*St. Louis & S. F. R. Co.* v. *Jones,* 78 Okla. 204, 190 Pac. 385, 16 A.L.R. 1048.

"El mero hecho de que algunos muchachos jugasen en un sitio más o menos distante de la vía del ferrocarril no imponía deber alguno a los empleados de la demandada de anticipar que en los momentos de pasar allí el tren, pudiese haber muchachos dentro de la vía" . . . . . "y solamente *debe obligárseles a reducir la velocidad y a tomar extraordinarias precauciones* cuando en realidad exista *un motivo que lo justifique.* Además, el que algunas tardes los muchachos jugasen en dicho sitio no es un *hecho tan ostensible* que justifique la conclusión de la corte *a quo* al efecto de que los empleados de la demandada *sabían* de estos juegos y *consiguientemente tenían el deber de tomar precauciones. De la prueba no resulta que los empleados de la demandada tuviesen conocimiento de tales juegos."* (Bastardillas nuestras.)

En el caso en apelación ante nos, los niños vivían junto a la vía y por razón de esa proximidad, acostumbraban a jugar en o cerca de la misma. Por ella cruzaban para entrar o salir del ranchón, lo que a todas luces, más que un hábito, era y es una necesidad continua, y toda esa situación era bien conocida del maquinista que conducía el tren. Por lo tanto, fundándonos en lo resuelto en *Ortiz* v. *American Railroad Co.*, supra, concluimos que, en el caso de autos existió y existe un motivo que justifica el que, cuando los trenes de la demandada pasen por ese lugar, ésta reduzca la velocidad de los mismos y tome precauciones extraordinarias ya que la situación de hechos arriba descrita constituye "un hecho tan ostensible" que impone a sus empleados la "obligación de anticipar la presencia de menores." Obligación que es más evidente cuando de la prueba se desprende que dichos empleados tenían conocimiento de esos hechos. Véase *Hernández* v. *Acosta y Maryland Casualty Co.*, ante, pág. 171.

Alega la apelante que la Corte de Distrito de Ponce cometió error al dictar sentencia contra la demandada por el fundamento de que la niña no era una transgresora. Un "trespasser" es un intruso, aquél que ha penetrado en la propiedad de otro sin permiso y no tiene derecho alguno a ello. De la prueba se desprende que la niña estaba parada

entre la vía y el ranchón, donde solamente hay una distancia de 5 pies cuatro pulgadas. Ninguna de las partes ofreció prueba en cuanto a quién era el propietario o poseedor de esa faja de terreno. Luego, ¿estaba la niña en terreno de la compañía o en los de la Hacienda Estrella? De los autos no podemos determinarlo. Pero, a los fines de resolver la cuestión, asumiremos que el sitio donde se encontraba la niña, en los momentos en que fué golpeada por la máquina, pertenecía a la compañía. En ese supuesto, encontramos que en Prosser, *On Torts,* la opinión de las autoridades se encuentra dividida en cuanto a si una persona en esa situación es o no una transgresora frente a la ley, y a las páginas 616–617 dice:

"En un número de casos, la corte ha tratado de explicar la responsabilidad manifestando que la tolerancia continua del demandado hacia un transgresor equivale a la concesión de permiso para usar el terreno, de tal suerte que el demandante ya no es un transgresor, sino una persona a quien se le ha concedido permiso (licensee)." (*Smith* v. *Philadelphia & R. Ry. Co.,* 1922, 274 Pa. 97, 117 Atl. 786).

Y a la página 621:

"El sitio donde se puede aplicar esta regla es aquél en que el dueño sabe o debe saber que hay la posibilidad de que tales niños estén. El dueño del terreno no viene obligado a tomar precauciones cuando no tiene motivo para creer que en sus terrenos entren niños." (*Standard Steel Works Co.* v. *Chicago, A. & E.R. Co.,* D. C., Ill. 1939, 29 Fed. Supp. 297).

Somos de opinión que dentro de las circunstancias de este caso la compañía venía obligada a anticipar la presencia de menores y a tomar las debidas precauciones para evitar el accidente.

■■ Sostiene la parte apelante que la corte inferior cometió error al dictar sentencia contra la demandada y sostener que los demandantes no fueron culpables de negligencia contributoria y que esta negligencia no fué la causa próxima del accidente. La existencia de negligencia contribu-

toria es una cuestión de hecho, que surge de las circunstancias particulares de cada caso y depende por tanto de la apreciación que de la prueba haga la corte inferior. Ésta dió crédito a la parte demandante y no la consideró incursa en negligencia contributoria. Nada encontramos en los autos que pueda justificar el que alteremos la conclusión de la corte sentenciadora. Además, aun cuando aceptáramos que los demandantes incurrieran en negligencia, siempre estaríamos obligados a determinar cuál de las dos negligencias fué la causa próxima e inmediata del daño causado. Aceptando, pues, que la niña se situó en una posición de peligro por razón de la negligencia de sus padres, la demandada, debiendo anticipar la presencia de menores en el lugar del accidente, tuvo la última oportunidad de evitar el daño mediante el ejercicio de una prudencia razonable, dando el oportuno aviso y reduciendo la velocidad del tren, precauciones que según resulta de la prueba, dejó de tomar. *Restatement of the Law, Torts, Negligence,* §§479 y 480.

*La sentencia recurrida debe ser confirmada.*