ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| MABEL BONILLA RODRÍGUEZ Y MABEL A. RODRÍGUEZ CORIANO<br><br>APELANTES<br><br><br>EX PARTE | KLAN202400984 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Mayagüez<br><br>Caso Núm.: MZ2023RF00418<br><br>Sobre: Declaración de incapacidad y Nombramiento de Tutor |
|---|---|---|

Panel integrado por su presidente, el Juez Adames Soto, la Jueza Santiago Calderón y el Juez Sánchez Báez[1]

Sánchez Báez, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 30 de abril de 2026.

Compareció la Sra. Mabel M. Bonilla Rodríguez (en adelante, "señora Bonilla Rodríguez" o "apelante") mediante el recurso de apelación de epígrafe. Nos solicitó la revisión de la *Sentencia* emitida el 12 de agosto de 2024, notificada el 19 de agosto de 2024, por el Tribunal de Primera Instancia, Sala Superior de Mayagüez (en adelante, "foro de instancia"). En el aludido dictamen, el foro de instancia declaró incapaz al Sr. Gabriel Bonilla Coriano (en adelante, "señor Bonilla Coriano") para administrar sus bienes y persona; y nombró tutores legales a sus hijos, la señora Bonilla Rodríguez y el Sr. Ángel Bonilla Rodríguez (en adelante, "señor Bonilla Rodríguez" o "apelado").

Por los fundamentos que expondremos a continuación, **modificamos** la *Sentencia* apelada.

---

[1] Mediante la Orden Administrativa OATA-2025-002 emitida el 9 de enero de 2025 se designó al Juez Isaías Sánchez Báez en sustitución del Juez Felipe Rivera Colón.

Número Identificador
SEN2026_____

**-I-**

El 6 de julio de 2023, la señora Bonilla Rodríguez y su madre, la Sra. Mabel Antonia Rodríguez Coriano, presentaron una *Petición*[2] sobre la declaración de incapacidad y nombramiento de un tutor para el señor Bonilla Coriano. Alegaron que el señor Bonilla Coriano no tenía capacidad para regir su persona, administrar sus bienes y tomar decisiones informadas sobre estos. Además, solicitaron que se nombrara tutor del presunto incapaz a su hija, la señora Bonilla Rodríguez.

El 9 de agosto de 2023, el señor Bonilla Rodríguez y su hermana, la Sra. Ana Bonilla Rodríguez presentaron su *Contestación a petición y oposición a nombramiento de tutor.*[3] Allí ambos se opusieron al nombramiento de su hermana, la señora Bonilla Rodríguez, como tutora legal del señor Bonilla Coriano. A su vez, solicitaron la declaración de incapacidad de este último y que el señor Bonilla Rodríguez fuese nombrado su tutor legal.

Posteriormente, el señor Bonilla Rodríguez presentó *Moción sobre descalificación de aspirantes a tutor Mabel Bonilla.*[4] En esta, argumentó que la señora Bonilla Rodríguez no podía fungir como tutora legal del presunto incapaz por los fundamentos siguientes: (i) tenía conocimiento sobre situaciones de violencia doméstica de su madre con el señor Bonilla Coriano; (ii) mantenía mala comunicación con el señor Bonilla Coriano; (iii) padece de alguna condición mental que le impide controlar su agresividad; y (iv) tiene conflicto de interés por mantener una acción civil contra el señor Bonilla Coriano.

De otro lado, la señora Bonilla Rodríguez presentó *su Moción solicitando descalificación del candidato a tutor.*[5] Argumentó que el

---

[2] Apéndice del recurso, anejo 4, págs. 42-233.
[3] *Id.,* anejo 7, págs. 237-264.
[4] *Id.*, anejo 12, págs. 276-289.
[5] *Id.*, anejo 16, págs. 309-413.

señor Bonilla Rodríguez estaba impedido de ejercer la tutela legal del presunto incapaz por las razones siguientes: (i) indujo al señor Bonilla Coriano a crear una cuenta bancaria privativa y a depositar en ella $45,882.91 pertenecientes a la sociedad legal de gananciales formada por sus padres; (ii) transfirió la cantidad de $48,000.00 de una cuenta bancaria privativa del señor Bonilla Coriano a una cuenta bancaria suya personal; (iii) indujo al señor Bonilla Coriano a otorgar un poder duradero a su nombre; (iv) radicó dos órdenes de protección contra su madre al amparo de la Ley Núm. 54-1989, según enmendada, conocida como *Ley para la prevención e intervención con la violencia doméstica*, 8 LPRA sec. 601 *et seq.* (en adelante, "Ley Núm. 54-1989"); y (v) radicó una querella con la intención de iniciar un caso criminal contra su madre bajo la Ley Núm. 54-1989, *supra.*

Luego de varios trámites procesales, el foro de instancia celebró el juicio en su fondo los días 26 y 28 de febrero de 2024 y el 6 de marzo de 2024. Allí, comparecieron las partes, el Procurador de Asuntos de Familia por parte del Departamento de Justicia y un Trabajador Social por parte del Departamento de la Familia. Además, el foro de instancia tuvo ante su consideración quince (15) documentos admitidos como prueba documental y los seis (6) testimonios siguientes: (i) el Sr. Jayson Cruz Cuevas, trabajador social; (ii) Lcda. Ivette González Correa; (iii) Dra. Limary Rosado Vidro; (iv) la señora Bonilla Rodríguez; (v) la Sra. Ana Bonilla Rodríguez; y (vi) el señor Bonilla Rodríguez.

El foro de instancia emitió *Sentencia*[6] el 12 de agosto de 2024, notificada el 19 de agosto de 2024, en la cual consignó las determinaciones de hechos siguientes:

1. El Sr. Gabriel Bonilla Coriano, al día de hoy incapaz, nació el 24 de marzo de 1935 y hoy día tiene 89 años.

---

[6] *Id.*, anejo 1, págs. 1-22.

2. Los peticionarios en este caso lo son la esposa y dos de los hijos del presunto incapaz, Don Gabriel Bonilla Coriano.

3. La peticionaria Sra. Mabel Monserrate Bonilla Rodríguez, es mayor de edad, casada, Médico y residente en Cabo Rojo, Puerto Rico.

4. La peticionaria, Mabel Antonia Rodríguez Coriano es mayor de edad, casada, empresaria, y residente de Mayagüez, Puerto Rico.

5. El peticionario, Don Ángel Bonilla Coriano, es mayor de edad, casado, desempleado y residente de Cabo Rojo, Puerto Rico.

6. Le sobrevive al incapaz su esposa y sus tres hijos.

[...]

15. Los bienes muebles que tiene la Sociedad Legal de bienes Gananciales compuesta por el incapaz y su esposa, co-peticionaria, Mabel A. Rodríguez Coriano, son los siguientes:
    a. Mobiliario de la casa principal
    b. Cuentas de banco
    c. Acciones Corporativas.

[...]

17. Los pagos que se realizan a la casa de cuido Hogar Edad Dorada donde, reside al día de hoy, constan del seguro social, más $1,600.00. El restante es cubierto por el caudal ganancial.

18. El incapaz padece de demencia cerebro vascular severa con ansiedad debido a sangrado cerebral por trauma.

19. Al día de hoy, se encuentra residiendo en el Hogar La Edad Dorada con dirección en el Reparto Señorial, Núm. 16, Carretera 348 km 1.1, Mayagüez, Puerto Rico.

20. El incapaz padece de las siguientes condiciones:
    a. Cáncer de Próstata
    b. Diabetes Tipo II
    c. Dislipidemia
    d. Incontinencia Urinaria y Fecal
    e. Desorientado en tiempo, lugar y persona
    f. Deformidad en extremidades
    g. Utiliza pañales desechables
    h. Es totalmente dependiente para realizar las actividades del diario vivir tale como trasladarse en silla de ruedas, ambular, bañarse y comer.
    i. Derrame cerebral y una hemorragia sub-aracnoidea.

21. A base de dichas condiciones el presunto incapaz sufre de un deterioro sustancial en su salud física y emocional que no le permite cuidar de su persona y de sus bienes. Las condiciones de salud que padece el incapaz le impiden regir su persona y sus bienes; no son reversibles y no existe cura para estas.

[...]

23. El Sr. Gabriel Bonilla Coriano no tiene la capacidad para poder expresar su preferencia en torno a la persona que prefiere se haga cargo de ejercer su tutela.

[...]

32. Ambos peticionarios, Don Ángel Bonilla Rodríguez y Doña Mabel Bonilla Rodríguez cuentan con las cualidades para asumir la tutela de su padre, DON GABRIEL BONILLA CORIANO, en bienestar de éste.[7]

Basándose en lo anterior, el foro de instancia declaró incapaz al señor Bonilla Coriano para administrar sus bienes y persona. Además, nombró tutores legales a ambos hijos, la señora Bonilla Rodríguez y el señor Bonilla Rodríguez.

En desacuerdo, el 3 de septiembre de 2024, la señora Bonilla Rodríguez presentó *Escrito de solicitud de reconsideración, de determinaciones de hechos, derecho y documentos adicionales y solicitud de enmienda*. En esencia, sostuvo que el foro de instancia erró al no descalificar al señor Bonilla Rodríguez como tutor a tenor del Artículo 135 del Código Civil de Puerto Rico de 2020, 31 LPRA sec. 5684. Argumentó, además, que el foro de instancia emitió su determinación sin evaluar la prueba documental y testifical que tuvo ante su consideración, y omitió incluir determinaciones de hechos importantes.

No obstante, el foro de instancia emitió una *Resolución* el 4 de octubre de 2024, notificada el 7 de octubre de 2024, mediante la cual denegó la solicitud de reconsideración.

Inconforme con lo anterior, la señora Bonilla Rodríguez acudió ante nos mediante el recurso de epígrafe y señaló la comisión de los errores siguientes:

A. Primer Error:
"Erró el TPI al abusar de su discreción, no tomando en cuenta, ignorando, desapercibiendo u omitiendo en la sentencia, sin fundamento alguno, hechos materiales e importantes de los cuales se pas[ó] prueba y que no podían ser pasados por alto."

B. Segundo Error:
"Erró el TPI al abusar de su discreción, no tomando en cuenta, ignorando, desapercibiendo u omitiendo en la sentencia, sin fundamento algunos documentos materiales e importantes tales como sentencias de otros casos de las cuales tenía que tomar conocimiento judicial, informes periciales solicitados por el Tribunal y

---

[7] *Id.,* págs. 7-12.

presentados y exigidos por ley, estados de cuenta y otros documentos de los cuales se pasó prueba y se entró a su contenido."

C. Tercer Error:
"Erró el TPI al abusar de su discreción y no actuar de buena fe, mediante pasión y perjuicio, parcialidad o error manifiesto, aun cuando el TPI había establecido, en procedimiento anteriores al juicio, que la solicitud de descalificación solicitada por el apelante, para descalificar al apelado, se trataría y se evaluaría en el juicio basado en la prueba que se presentara y utilizando el derecho aplicable y no lo hizo."

D. Cuarto Error:
"Erró el TPI al no aplicar, obviar, desapercibir, omitir y no incluir en su sentencia el derecho aplicable sobre la descalificación de un candidato a ser tutor, bajo el art[í]culo 144 del C[ó]digo Civil, *supra*, el cual conllevaba que el apelado fuera excluido y no pudiera ser candidato a tutor."

E. Quinto Error:
"Erró el TPI al incluir en sus determinaciones, hechos inconsistentes que no guardan relación con la prueba desfilada."

Tras la estipulación de la Transcripción de Prueba Oral (en adelante, "TPO"), el señor Bonilla Rodríguez y el Procurador de Asuntos de Familia presentaron sus respectivas oposiciones al recurso.

Así pues, perfeccionado el recurso, procedemos a exponer la normativa jurídica aplicable a las controversias ante nuestra consideración.

**-II-**

**A. Tutela**

Nuestro ordenamiento jurídico establece un presuncion de capacidad de aquella persona natural mayor de edad, de obrar por sí misma. Artículo 100 del Código Civil de Puerto Rico de 2020, 31 LPRA sec. 5601. Tal presuncion puede ser rebatida solo con una sentencia de incapacitación absoluta o de restricción parcial de capacidad conforme a las causas y extensión que reconoce la ley. *Id* Una persona natural puede tener incapacidad absoluta o parcial, no obstante, en ambos casos se requiere cuente con el nombramiento de un tutor para que la asista y represente en los asuntos ordinarios

y legales de su vida. Artículo 101 del Código Civil de Puerto Rico de 2020, 31 LPRA sec. 5611. Para ello, "cualquier pariente con plena capacidad de obrar que tenga derecho a sucederle" puede solicitar la declaración de incapacitación absoluta o parcial de una persona mayor de edad. Artículo 110 del Código Civil de Puerto Rico de 2020, 31 LPRA sec. 5631.

En ese sentido, la figura jurídica de la tutela "confiere a una persona natural o jurídica la autoridad para representar y asistir a otra que, sin estar sujeta a la patria potestad, tiene restringida la capacidad de obrar por razón de su minoridad o por las causas que declara la ley". Artículo 122 del Código Civil de Puerto Rico de 2020, 31 LPRA sec. 5661. El propósito de esta figura es "la guarda y representación de una persona incapaz y la administración de sus bienes, o solamente dicha administración, según las limitaciones que determine la sentencia y las exigencias del régimen tutelar al que queda sometida". *Id.* Además, sus funciones constituyen un deber, en beneficio del tutelado y bajo la salvaguarda de la autoridad judicial. *Id.*

Ahora bien, nuestro sistema judicial establece un orden de prelación para nombrar un tutor al incapaz mayor de edad, a saber:

    (a) al cónyuge, siempre que convivan y conserven la relación marital a la fecha de la declaración;
    (b) a cualquiera de los progenitores, si los hijos del incapaz son menores de edad;
    (c) a cualquiera de los hijos;
    (d) a cualquiera de los abuelos;
    (e) a cualquiera de los hermanos;
    (f) a cualquier persona natural idónea, relacionada por lazos afectivos o solidarios con el incapaz, que quiera y pueda asumir responsablemente el cargo; o
    (g) a cualquier persona jurídica dedicada a este ejercicio tutelar.

La designación se hace de acuerdo al interés óptimo del incapaz.

Artículo 134 de Código Civil de Puerto Rico de 2020, 31 LPRA sec. 5683.

En el caso de que varias personas concurran con igual facultad en el mismo orden de prelación para el nombramiento de

tutor, el Tribunal como regla general debe hacer una sola designación a base del interés óptimo del tutelado, salvo que sea conveniente que dos o más compartan simultáneamente el cargo. Artículo 135 del Código Civil de Puerto Rico de 2020, 31 LPRA sec. 5683. Es relevante notar que, en los comentarios del Código Civil Comentado sobre el Artículo 135, se dispuso que la norma prefiere que el ejercicio de la tutela se concentre en una sola persona, pero "es posible que el cargo se ejerza por dos (2) o más personas simultáneamente, si conviene al interés óptimo del tutelado, o por una (1) sola de ellas, si la satisfacción de ese interés se alcanza con el ejercicio solitario del cargo". Véase, Artículo 135 del Código Civil Año 2020 Comentado, https://8b1bf758-1982-44d6-af7c-944f8408e8fa.filesusr.com/ugd/5be21a_15cd7772b7ca4ecd84035ed394e1e517.pdf

Además, se establece que podrán ser tutor los siguientes: (i) aquella persona natural que goza del pleno ejercicio de sus derechos civiles y que no está inhabilitada por alguna de las causas establecidas por ley; y (ii) aquella persona jurídica que no tenga finalidad lucrativa y entre cuyos fines constitutivos figure la protección de menores y de incapaces. Artículo 143 del Código Civil de Puerto Rico de 2020, 31 LPRA sec. 5701. Sin embargo, nuestro estado de derecho inhabilita para ser tutor a las personas siguientes:

> **(a)** la persona que está privada o suspendida del ejercicio de la patria potestad por resolución judicial;
> **(b)** la persona que ha sido privada de una tutela anterior por las causas que dispone la ley o la persona que está sujeta a ella;
> **(c)** la persona sentenciada a cualquier pena privativa de libertad, mientras está cumpliendo la sentencia;
> **(d)** la persona convicta por delito grave o menos grave que implica depravación moral o que exhibe conducta que hace suponer fundadamente que no desempeñará bien la tutela;
> **(e)** la persona que tiene conflicto de interés con el menor o el incapaz, mantiene un pleito o acción sobre el estado civil del menor o el incapaz o sobre la titularidad de sus bienes o le adeuda sumas de consideración;

**(f)** la persona quebrada no rehabilitada, salvo que la tutela sea de la persona;

**(g)** la persona que ha presentado maliciosa e injustificadamente alguna querella contra el menor o acusación criminal contra sus ascendientes o colaterales hasta el cuarto grado;

**(h)** la persona que no reside en Puerto Rico, a menos que al momento del nombramiento tenga al menor o al incapaz en su compañía o se trate de la tutela de bienes ubicados fuera del territorio o que pueden administrarse desde cualquier lugar; y

**(i)** la persona excluida expresamente por los progenitores en testamento o escritura pública, salvo que el tribunal lo estime conveniente, en beneficio del menor o del incapaz.

Artículo 144 de Código Civil de Puerto Rico de 2020, 31 LPRA sec. 5702.

**B. Apreciación de la Prueba**

Sabido es que los foros apelativos tenemos la facultad de revisar en su totalidad las conclusiones de derecho que emita el Tribunal de Primera Instancia. *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 770 (2013). Sin embargo, en cuanto a las determinaciones de hechos, la Regla 42.2 de Procedimiento Civil dispone lo siguiente:

Las determinaciones de hechos basadas en testimonio oral no se dejarán sin efecto a menos que sean claramente erróneas, y se dará la debida consideración a la oportunidad que tuvo el tribunal sentenciador para juzgar la credibilidad de las personas testigos.

32 LPRA Ap. V, R. 42.2.

Lo anterior, basado en que, el foro primario merece gran deferencia, ya que es quien está en mejor posición de evaluar y adjudicar la credibilidad de un testigo. *Ramírez Ferrer v. Conagra Foods PR*, 175 DPR 799, 810 (2009); *Argüello v. Argüello*, 155 DPR 62, 79 (2001). Esto es, es el Tribunal de Primera Instancia quien tiene la oportunidad de apreciar los gestos, titubeos, contradicciones, manierismos, dudas, vacilaciones, entre otros elementos subjetivos, de los testigos que declaran en el pleito. *Argüello v. Argüello*, supra, págs. 78, citando a *Figueroa v. Am. Railroad Co.*, 64 DPR 335, 336 (1994).

Por ello, nuestro Tribunal Supremo ha sido enfático en que los tribunales apelativos —como regla general— debemos evitar

intervenir con la apreciación de la prueba, la adjudicación de credibilidad y las determinaciones de hechos que realiza el foro primario, salvo que se demuestre que este incurrió en error manifiesto, pasión, prejuicio o parcialidad. *Sucn. Rosado v. Acevedo Marrero*, 196 DPR 884, 917 (2016); *Dávila Nieves v. Meléndez Marín*, supra, pág. 771; *Ramírez Ferrer v. Conagra Foods PR*, supra, pág. 811; *Argüello v. Argüello*, supra págs. 78-79. Por tanto, nuestra intervención con la prueba testifical solo procederá cuando, al llevar a cabo un análisis integral de esta, "nos cause una insatisfacción o intranquilidad de conciencia tal que estremezca nuestro sentido básico de justicia". *Sucn. Rosado v. Acevedo Marrero*, supra, pág. 918. Por consiguiente, nuestra facultad de sustituir las determinaciones hechas por el Tribunal de Primera Instancia se limita a aquellas circunstancias en las que no exista base suficiente para apoyar las mismas a la luz de la prueba admitida. *Ortiz Ortiz v. Medtronic*, 209 DPR 759, 779 (2022); *Gómez Márquez et al. v. El Oriental*, 203 DPR 783, 794 (2020).

De este modo, una parte que impugne las determinaciones de hechos emitidas por el foro primario debe identificar el error manifiesto o fundamentar la existencia de pasión, prejuicio o parcialidad. *SLG Rivera Carrasquillo v. AAA*, 177 DPR 345, 356 (2009). Dicha parte deberá "sustentar sus alegaciones con evidencia suficiente, pues estas no deben convertirse en un instrumento para ejercer presión contra el Tribunal de Primera Instancia". *Dávila Nieves v. Meléndez Marín,* supra, pág. 775. De esta forma, el foro apelativo podrá evaluar si el juzgador de los hechos cumplió con su rol de adjudicar la controversia conforme a derecho y de manera imparcial. *Id.*, pág. 777.

Particularmente, cuando se trate de prueba pericial, ningún tribunal está obligado a coincidir con las conclusiones de un perito, independientemente de que esta sea técnicamente correcta. *Sucn.*

*Rosado v. Acevedo Marrero*, supra, pág. 918. Por tanto, todo tribunal tiene discreción de adoptar su propio criterio en la apreciación de dicha prueba. *Id.*, citando a *Zambrana v. Hospital Santo Asilo de Damas*, 109 DPR 517, 522 (1980) y a *Prieto v. Maryland Casualty Co.*, 98 DPR 594, 623 (1965). Asimismo, los foros apelativos se encontrarán en la igual posición que el foro de instancia para evaluar la prueba pericial. *Sucn. Rosado v. Acevedo Marrero*, supra, pág. 918; *González Hernández v. González Hernández*, 181 DPR 746, 777 (2011).

**C. Abuso de discreción**

Las decisiones del Tribunal de Primera Instancia merecen gran deferencia, toda vez que conoce mejor las particularidades del caso y está en mejor posición para tomar las medidas necesarias para cimentar el curso de acción hasta obtener una disposición final. *Citibank et al v. ACBI et al.*, 200 DPR 724, 735-736 (2018); *Mejías et al. v. Carrasquillo et al.*, 185 DPR 288, 306-307 (2012). Por ello, los foros primarios "cuentan con una discreción que es inherente a su función de resolver los casos y controversias que llegan ante su consideración". *Pueblo v. Custodio Colón*, 192 DPR 567, 588 (2015).

Siendo así, la regla general es que los tribunales apelativos no deben intervenir con las determinaciones del foro primario ni sustituir su criterio, salvo que las decisiones emitidas sean arbitrarias o constituyan un abuso de discreción judicial. *Citibank et al. v. ACBI et al.*, supra, pág. 736; *Pueblo v. Custodio Colón*, supra, pág. 589.

En nuestro ordenamiento, la "discreción judicial" se refiere a la facultad de un tribunal de justicia para resolver de una forma u otra, o de escoger entre varios cursos de acción. *Citibank et al. v. ACBI et al.*, supra, pág. 735; *García v. Asociación*, 165 DPR 311, 321 (2005). Además, se ha interpretado que la discreción está atada al

concepto de razonabilidad y, a la vez, se fundamenta en un sentido llano de justicia. *Id.* Esto es, la "discreción es una forma de razonabilidad que aplica al discernimiento judicial para llegar a una conclusión justiciera". *Id.*

A esos efectos, un tribunal incurre en abuso de discreción cuando: "(1) el juez no toma en cuenta e ignora, sin fundamento para ello, un hecho material importante que no podía ser pasado por alto; (2) el juez, sin justificación y fundamento alguno para ello, le concede gran peso y valor a un hecho irrelevante e inmaterial y basa su decisión exclusivamente en él, o (3) a pesar de tomar en cuenta todos los hechos materiales e importantes y descartar los irrelevantes, el juez sopesa y los calibra livianamente". *Pueblo v. Custodio Colón*, supra, pág. 589; véase, además, *Citibank et al. v. ACBI et al.*, supra, pág. 736.

Discutido el derecho aplicable, este Tribunal se encuentra en posición para resolver las controversias señaladas en el recurso de epígrafe.

**-III-**

En el caso de epígrafe, la apelante esbozó cinco (5) señalamientos de error que atenderemos en conjunto por estar relacionados entre sí. En esencia, argumentó que el foro de instancia abusó de su discreción al no evaluar toda la prueba que se desfiló en el juicio y al no redactar determinaciones de hechos conforme a ello. Además, sostuvo que el foro de instancia abusó de su discreción al no atender las mociones de descalificación que fueron presentada por las partes respectivamente y al no aplicar el Artículo 144 del Código Civil de Puerto Rico de 2020, *supra*.

Surge del expediente que ambos hermanos solicitaron la declaración de incapacidad de su padre, el señor Bonilla Coriano. El foro de instancia así lo concedió y, en cuanto a eso, no hay controversia. Asimismo, consta en el expediente que, ambos

hermanos solicitaron ser nombrados tutores del señor Bonilla Coriano, oponiéndose cada uno a la designación del otro.

De un lado, la señora Bonilla Rodríguez argumentó que su hermano, el señor Bonilla Rodríguez, estaba impedido de ejercer el cargo de tutor por las razones siguientes: (i) indujo al señor Bonilla Coriano a crear una cuenta bancaria privativa y a depositar en ella $45,882.91 pertenecientes a la sociedad legal de gananciales formada por su padre y su madre; (ii) transfirió la cantidad de $48,000.00 de esa cuenta privativa del señor Bonilla Coriano a una cuenta bancaria suya personal; (iii) indujo al señor Bonilla Coriano a otorgar una poder duradero a su nombre; (iv) radicó dos órdenes de protección contra su madre al amparo de la Ley Núm. 54-1989, *supra*, y (v) radicó una querella con la intención de iniciar un caso criminal contra su madre bajo la Ley Núm. 54-1989, *supra*.

Por otra parte, el señor Bonilla Rodríguez sostuvo que su hermana, la señora Bonilla Rodríguez no podía fungir el cargo de tutora por los fundamentos siguientes: (i) conocía las situaciones de violencia doméstica de su madre con el señor Bonilla Coriano; (ii) mantenía mala comunicación con el señor Bonilla Coriano; (iii) padece de alguna condición mental que le impide controlar su agresividad; y (iv) tiene conflicto de interés por mantener una acción civil contra el señor Bonilla Coriano.

Los planteamientos antes descritos fueron argumentados por las partes en las respectivas mociones de descalificación que presentaron ante la consideración del foro de instancia. Véase, apéndice del recurso, anejos 12 y 16. Respecto a esas mociones, el foro de instancia determinó que, en su momento, celebraría una vista evidenciaria y emitiría una determinación basada en la prueba que se presente y en el derecho aplicable. Véase, apéndice, anejo 21, pág. 543. Sin embargo, al revisar con detenimiento tanto el expediente de epígrafe, así como la *Sentencia* apelada, no hemos

hallado alguna determinación fundamentada del foro de instancia en cuanto a esos planteamientos. Con relación a ello, lo único que hizo el foro de instancia fue nombrar a ambos hermanos tutores del señor Bonilla Coriano, pues concluyó que ninguno estaba inhabilitado para ejercer el cargo.

Conforme explicamos en el derecho aplicable, en Puerto Rico podrá ser tutor aquella persona natural con capacidad para obrar y que no está inhabilitada por alguna de las causas de ley como las siguientes:

> **(e)** la persona que tiene conflicto de interés con el menor o el incapaz, mantiene un pleito o acción sobre el estado civil del menor o el incapaz o sobre la titularidad de sus bienes o le adeuda sumas de consideración;
> [...]
> **(g)** la persona que ha presentado maliciosa e injustificadamente alguna querella contra el menor o acusación criminal contra sus ascendientes o colaterales hasta el cuarto grado;

Véase, Artículos 143 y 144 del Código Civil de Puerto Rico de 2020, *supra.*

Luego de examinar los autos, procede concluir que, aunque ambos hermanos plantearon la controversia sobre la descalificación y presentaron en el juicio la prueba que estimaron pertinente, el foro de instancia no adoptó una postura definida ni resolvió la controversia de manera fundamentada. Es decir, optó por una determinación de carácter salomónico, sin aquilatar la prueba ni adjudicar credibilidad a los testigos. En consecuencia, se desconoce a cuál de los hermanos o a que parte de sus testimonios el tribunal de instancia le confirió credibilidad, ya que no realizó determinaciones específicas al respecto. Tampoco atendió las controversias sobre descalificación y mucho menos fundamentó por qué —a base de la prueba desfilada— se probaron o no los planteamientos de descalificación. Dicha facultad compete exclusivamente al foro de instancia que fue quien tuvo la oportunidad de ver, oír y percibir directamente a los testigos y, además, es su deber emitir determinaciones de hechos y

conclusiones de derecho que permitan una revisión judicial efectiva. Las actuaciones del foro de instancia no solo privan a este foro apelativo de una base adecuada para ejercer su función revisora, sino que constituye un incumplimiento de sus deberes.

Por consiguiente, este foro apelativo se encuentra imposibilitado de atender y resolver la controversia a base del expediente, toda vez que nuestra función se limita a examinar el récord sin intervenir en la adjudicación de credibilidad de los testigos. Resolvemos, pues, que el foro de instancia incurrió en abuso de discreción, en la medida que ignoró hechos materiales importantes sin justificación ni fundamentos. *Pueblo v. Custodio Colón*, supra; *Citibank et al. v. ACBI et al.*

En cuanto al nombramiento de un tutor, consta en el expediente que el foro de instancia designó a ambos hermanos —el señor Bonilla Rodríguez y a la señora Bonilla Rodríguez— tutores del incapaz. Ahora bien, explicamos en el acápite II de esta *Sentencia,* que la regla general es que la tutela en Puerto Rico sea ejercida por una sola persona. No obstante, a modo de excepción, la tutela puede ser ejercida por dos o más personas simultáneamente, siempre que ello sea conveniente para el interés óptimo del tutelado. Véase, Artículo 135 del Código Civil Año 2020 Comentado, *supra.*

Tras examinar el expediente de autos, sin embargo, notamos que el foro de instancia nombró a dos (2) tutores sin fundamentos para ello. Es decir, los nombró a ambos porque cualificaban y así lo solicitaron. Esto demuestra nuevamente que el foro de instancia evadió su función de identificar y resolver las controversias ante sí. En este caso la controversia consiste en sí el interés óptimo del incapaz se sirve mejor y más eficazmente con el nombramiento de ambos hermanos como tutores, o si, por el contrario, basta con el nombramiento de solo uno de ellos.

Además, nos percatamos que el mencionado nombramiento se designó sin hacer una especial distribución de tareas entre ambos hermanos para ejercer la tutela de su padre, el señor Bonilla Coriano. Ello reviste particular importancia, en la medida en que del expediente de epígrafe se desprende la existencia de una relación caracterizada por desavenencias entre los dos (2) hermanos designados como tutores. Nótese que el señor Bonilla Rodríguez testificó en el juicio que la relación con su hermana era como sigue:

> Negativa. Una relación completamente negativa. Desde que ella entró a la corporación, o que vino a entrar a la corporación, ella nunca estuvo. Estuvo en el año '90, '91. Se fue a estudiar medicina, 30 años fuera, llegó, quiso apoderarse de la corporación, manipular a mi mamá. Abusar de mi papá verbalmente, diciendo que su palabra no valía, diciendo que él era un viejo, influenciando a mi mamá para que se divorciara. Y mire, mi mamá le puso el divorcio a mi papá después de 59 años de casados.

Véase, TPO, tomo II, pág. 41.

De la misma manera, la señora Bonilla Rodríguez declaró en el juicio con relación a su hermano lo siguiente:

> [...] Él le puso a mi mamá una Orden 408. Acusó a Mami dos veces de abuso de envejecientes. Lo que conllevó a que mis papás no se pudieran ver por más de tres meses en las navidades anticipadas – antepasadas. Y mi papá está en un "home" todos los días preguntándome por Mami. Causó unas situaciones de mucho dolor y mucho sufrimiento para ambos, de mis padres, con falsas acusaciones.

Véase, TPO, tomo I, pág. 241.

Así pues, considerando que ambas partes declararon en corte abierta que mantienen una relación conflictiva, es evidente que tal circunstancia podría incidir directamente en el adecuado desempeño de la tutela del señor Bonilla Coriano. Sin embargo, de la *Sentencia* apelada y de los escasos fundamentos allí contenidos, no advertimos cómo la concurrencia de los dos hermanos en el ejercicio del cargo podría resultar conveniente al interés óptimo del señor Bonilla Coriano, máxime cuando no se han dispuesto una distribución de las funciones y/o tareas entre los tutores designados.

En síntesis, debido a que el foro de instancia ni resolvió de manera fundamentada las controversias planteadas, ni adjudicó credibilidad a los testigos, nos encontramos impedidos de realizar una revisión adecuada del presente caso. Intentar resolver la controversia ante nuestra consideración —a base de un récord inexpresivo y sin la debida ponderación de la prueba por parte del foro de instancia— equivale a incurrir en el mismo error de emitir una determinación sin fundamentos. Por tanto, estimamos prudente devolver el caso al foro de instancia para que —conforme a la credibilidad que en su momento otorgó o debió otorgar a los testimonios presentados ante su consideración— evalúe los planteamientos sobre descalificación y adopte una de las alternativas siguientes: (1) designar un solo tutor; o (2) de manera excepcional, mantener la designación de ambos hermanos como tutores y distribuir entre ellos las funciones correspondientes, siempre que se consigne por escrito la justificación que permita concluir que esa medida redunda en el interés óptimo del tutelado.

**-IV-**

Por los fundamentos antes expuestos, se **modifica** la *Sentencia* apelada. En específico, se mantiene en pleno vigor la declaración de incapacidad del señor Bonilla Coriano, toda vez que las partes no han presentado objeción sobre ello. Sin embargo, se **revoca** la determinación sobre el nombramiento de tutores. En consecuencia, se **devuelve** el caso al foro de instancia para que se atienda los planteamientos de descalificación a la luz de la prueba vertida en juicio y conforme a la credibilidad que dictamine, y proceda a designar al tutor correspondiente de forma compatible con lo aquí resuelto.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


                            Lcda. Lilia M. Oquendo Solís
                        Secretaria del Tribunal de Apelaciones